*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0389P (6th Cir.)
File Name: 01a0389p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 00-3536

NORTHWESTERN OHIO
ADMINISTRATORS, INC.,
                    *Plaintiff,*

                                        Nos. 00-3536/3538

                    *v.*


WALCHER & FOX, INC.,
          *Defendant-Appellee/*
          *Third-Party Plaintiff,*


INTERNATIONAL ASSOCIATION
OF BRIDGE, STRUCTURAL,
AND ORNAMENTAL IRON
WORKERS LOCAL UNION NO.
55; VAL HELLDOBLER,
          *Defendants-Appellants/*
          *Third-Party Defendants.*


No. 00-3538

NORTHWESTERN OHIO
ADMINISTRATORS, INC.,
          *Plaintiff-Appellee,*


                    *v.*

1

WALCHER & FOX, INC.,
          *Defendant-Appellant/*
          *Third-Party Plaintiff.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 98-07443—David A. Katz, District Judge.

Argued:  August 8, 2001

Decided and Filed:  November 6, 2001

Before:  KEITH, NORRIS, and BATCHELDER, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**  John M. Roca, GALLON & TAKACS, Toledo,
Ohio, Alan G. Ross, ROSS, BRITTAIN & SCHONBERG,
Cleveland, Ohio, for Defendants.    Robert A. Koenig,
SHUMAKER, LOOP & KENDRICK, Toledo, Ohio, for
Plaintiff. **ON BRIEF:**  John M. Roca, Joseph M. D'Angelo,
GALLON & TAKACS, Toledo, Ohio, Alan G. Ross, Fred N.
Seleman, ROSS, BRITTAIN & SCHONBERG, Cleveland,
Ohio, for Defendants.    Robert A. Koenig, James H.
O'Doherty, SHUMAKER, LOOP & KENDRICK, Toledo,
Ohio, for Plaintiff.

_____

**OPINION**

_____

   ALICE M. BATCHELDER, Circuit Judge.   These two
interlocutory appeals arise out of a single case, and we have
therefore consolidated them for purposes of this appeal.

part of the collective bargaining process and was therefore immune from suit for malpractice by the union member. The facts of these two cases are easily distinguished from those in the instant case, and whether the attorney was acting on behalf of the union was not at issue in either of them.

The issue of whether Helldobler was actually acting on behalf of the Union when he committed his alleged fraud is still open. More importantly, the immunity established by the Supreme Court in *Atkinson* and expanded in *Complete Auto Transit, Inc., v. Reis*, 451 U.S. 401, 417 (1981) (holding "that § 301(a) does not sanction damages actions against individual employees for violating the no-strike provision of the collective-bargaining agreement, whether or not their union participated in or authorized the strike"), is immunity from actions brought under section 301 for "violation of contracts between an employer and a labor organization." Labor Management Relations Act of 1947, § 301(a), 29 U.S.C. § 185(a) (2001). We join the Third Circuit in concluding "that a state law claim brought against a union officer that does not implicate a collective bargaining agreement covered by section 301(a) does not give rise to section 301(b) immunity. When section 301(a) is inapplicable, the immunity provided by section 301(b) is also inapplicable." *Sever*, 985 F.2d at 1231.

The action before us today is not an action for violation of a contract between Walcher & Fox and the union. Walcher & Fox was not a party to the collective bargaining agreement with the union. Indeed, that fact is at the heart of Walcher & Fox's claims against Helldobler. Accordingly, we hold that Helldobler is not entitled to claim immunity from suit on this counterclaim.

**Conclusion**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellee Northwestern Ohio Administrators, Inc., ("NOA") a non-profit corporation that administers employee benefit plans under the Employment Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"), sued Defendant-Appellant Walcher & Fox Inc. ("W&F"), an Ohio corporation engaged in the construction business, claiming that W&F owed fringe benefit and pension fund contributions for all of its employees pursuant to project agreements entered into by W&F and the International Association of Bridge, Structural, and Ornamental Ironworkers Local Union No. 55 ("the Union"). NOA moved for partial summary judgment and the district court denied the motion, holding that the project agreements were ambiguous because hand-written notations on some of those agreements indicated that the parties may have intended the agreements to cover only the few union members hired by W&F at the behest of the Union's representative Val Helldobler. W&F impleaded the Union and Helldobler, alleging that they had fraudulently misrepresented the scope of the project agreements and that they were therefore liable for contribution and indemnification for any monies owed by W&F to NOA. The Union and Helldobler moved to dismiss W&F's third-party complaint.

The district court then trifurcated the case to determine (1) the scope of the agreements, (2) liability under the agreements, and (3) liability of the Union and Helldobbler. After a bench trial on the scope of coverage issue, the court concluded that NOA was entitled to rely on the type-written language of the agreements, and that the hand-written notations on those agreements were not sufficient to put NOA on notice of the "modification" envisioned by the parties. Accordingly, the court held, NOA was entitled to collect contributions for all of the Company's employees who worked under the project agreements regardless of whether the parties intended to limit the benefits available under the project agreements to a handful of Union employees. The court certified the issue for interlocutory appeal.

In their motion to dismiss the third-party complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Helldobler and the Union claimed that the federal court did not have subject matter jurisdiction over the action and that the claims were preempted. The district court denied the motion to dismiss and certified the issue for interlocutory review.

We accepted both interlocutory appeals, and we **AFFIRM** both of the district court's orders.

### I.  Factual Background

This case arises out of an on-going employment dispute between the Union and W&F. W&F is a construction subcontractor primarily engaged in the erection of pre-engineered steel buildings; it contracts with employees on a project-by-project basis. For most of its existence, W&F used exclusively non-union labor. Val Helldobler, an organizer for the Union, approached the owners of W&F in September of 1996, requesting that W&F unionize its workforce. The owners declined, claiming that W&F could not afford to pay Union wages and benefits to all its employees. Helldobler suggested that W&F ease into unionization by hiring one or two union workers per job. It was Helldobler's hope that this incremental approach would demonstrate to W&F the "advantages of a Union workforce."

W&F and the Union negotiated a compromise, and Helldobler made hand-written notations on two of the printed Project Agreement forms. One of those Agreements bears the notation "2-men Arkam Steel job only;" the other bears the handwritten note "1 Journeyman & 1 Apprentice 8th man weekly benefit pay." These markings appear near the signature line of the agreements and no reference to them appears anywhere in the body of the agreement. The three remaining agreements that are the subject of this action contain no such notations, but W&F alleges that they were entered into on similar terms. Helldobler denies that the

---

executed, not any term of the Agreements themselves. Section 301 therefore does not preempt the third-party state law claim.

Finally, allowing the district court to rule on the fraud claim presents no threat to federal labor law. Because ruling on the fraud claim does not involve the interpretation of a collective bargaining agreement, ruling on that claim presents no challenge to the uniformity of federal law governing labor contracts. In short, section 301 does not preempt Walcher & Fox's claim of fraud in the inducement.

### D.  Individual immunity under *Atkinson*

Lastly, Helldobler claims that *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962) *overruled on other grounds by Boys Markets, Inc., v. Retail Clerk's Union, Local 770,* 398 U.S. 235 (1970) provides him immunity from suit. Helldobler misreads *Atkinson*. *Atkinson* addressed the question of whether individual union members could be held liable for the union's violation of a no-strike clause in their contract. The Supreme Court held that they could not. *Id.*, at 247-48. *Atkinson* does not stand for the more radical proposition advanced here by Helldobler, that union members are immune from suit for their individual acts simply by virtue of union membership. *See Felice v. Sever*, 985 F.2d 1221, 1230 (3d Cir. 1993) ("[The defendants] view the immunity extended by section 301(b) as covering all 'conduct related to their actions as Union officers.' . . . [T]he legal principle as enunciated by [the defendants] is too broad.").

Helldobler also cites two Ohio cases, *Sellers v. Doe*, 650 N.E.2d 485 (Ohio App. 1994), and *Collins v. Lefkowitz*, 584 N.E.2d 64 (Ohio App. 1990), in support of his claim of immunity. Each of these cases involved an attorney hired by the union to perform services on behalf of a union member in connection with the employer's disciplinary action against that union member. In each of those cases, the court held that the attorney was an agent of the union performing services as

914 F.2d 795, 799 (6th Cir. 1990). "Section 301 preempts only state law claims that are 'substantially dependent on analysis of a collective bargaining agreement,' . . . not claims that only 'tangentially' involve CBA provisions." *Id.* at 799-800 (internal citations omitted).

The Ninth Circuit case, *Operating Eng'rs Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir. 1990), involved facts similar to those in the case at hand. There, the court ruled that a state law claim of fraudulent inducement did not require interpretation of the collective bargaining agreement. *Id.* at 538. The agreement at issue was an owner-operator agreement that the union presented to the employer claiming that the employer had to sign it to continue work at that job site. *Id.* The Ninth Circuit held that the fraudulent inducement claim was not preempted because it did not require the court to interpret the agreement but instead involved only the facts surrounding the formation of the agreement without reference to the agreement itself. *Id.* at 538-39.

The claim advanced by W&F—that the Union fraudulently induced it to sign the Employer Participation Agreements—like the claim in *Wilson*, does not require interpretation of a collective bargaining agreement[3] or even of the Employer Participation Agreements themselves. Instead, the rights and duties at issue arise from the Union's actions prior to the formation of the Employer Participation Agreements. W&F alleges that the Union claimed it was seeking only to show W&F the benefits of having a union labor force, when in fact it was deceiving the employer into paying union benefits for all its employees. The relevant inquiry here concerns the representations made by the Union and/or Helldobler at the time the Project Agreements were

---

[3]Although the Employer Participation Agreements incorporate the terms of a collective bargaining agreement, as we have previously noted, W&F was not a party to the collective bargaining agreement and the Union was not authorized to bargain on behalf of W&F's employees.

parties agreed to limit union participation on any project, and states that the handwritten notations indicate a floor for union participation, rather than a ceiling.

Each of the Project Agreements—entitled "Employer Participation Agreements"—at issue in this case incorporates the terms and conditions of the Collective Bargaining Agreement ("CBA") entered into by the Labor Relations Division of the Associated General Contractors of Northwest Ohio and the Union. Those Employer Participation Agreements provide:

> 1. The Company[1] hereby recognizes the Union as the representative of a majority of its employees designated, acknowledges receipt of a copy of the current Bargaining Agreement and agrees to be bound by the terms and conditions contained therein . . . .
>                       * * *
> 4. The Company agrees to make the contributions and deductions to the said Plans at the times and in the amounts specified in the Bargaining Agreement, for all its employees performing the work specified in the Bargaining Agreement.

The CBA provides that each Participating Employer shall:

> make payments of fringe contributions and deductions to each and every employee benefit plan for all employees of each such Participating Employer who are members of the collective bargaining unit represented by the Union (whether or not the employees are members of the Union).

(CBA, Art. XXVI(B) Par. 148).

---

[1]Each agreement expressly provides that Walcher & Fox is "The Company."

W&F presented testimony that the agreements were intended to cover the Union workers only, and not all employees. Between September 1996 and September 1997, W&F paid fringe benefit and pension contributions for the Union employees, and administered its own benefit plan for the non-union employees. Helldobler picked up the weekly benefit checks for the Union members. In September of 1997, Helldobler attempted to organize the non-union workers at the job site but they universally declined to join. Despite the apparent lack of interest on the part of W&F's non-union employees, Helldobler demanded that W&F employ only Union workers for two projects in the Toledo, Ohio, area. W&F refused to accept Helldobler's ultimatum, and the dispute soon escalated to include Union picketing of W&F. Shortly thereafter, Helldobler notified NOA that W&F had failed to make the fringe benefit and pension contributions that Helldobler claimed the CBA provisions incorporated into the Project Agreements required for all of W&F's employees.

In October of 1997, NOA requested that W&F allow a payroll audit for all employees working on the projects covered by the five agreements to determine whether W&F was properly paying the fringe benefit contributions for its employees. W&F refused, claiming that NOA had the right to audit only the records of the handful of Union employees performing work under the Project Agreements. This lawsuit ensued.

## II. Standard of review

Because this is an interlocutory appeal, we have no authority to review the district court's findings of fact, but must confine our review to pure questions of law. *See Foster Wheeler Energy Corp. v. Metro Know Solid Waste Auth., Inc.* 970 F.2d 199, 202 (6th Cir. 1992). We review the district court's conclusions of law de novo. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).

that rights and duties are clearly understood and to lessen industrial strife occasioned by conflict over differing interpretations of collective bargaining agreements. *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 855-57 (1987).

Since federal law is the exclusive law used to interpret the duties and obligations contained within collective bargaining agreements, any state law claim that is not independent of rights established by an agreement, and that is "inextricably intertwined" with a determination of the meaning of the terms of an agreement, is preempted by section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Thus, if a state tort relies on or entails interpretation of a collective bargaining agreement, the state claim is preempted. *Id.* at 217-18. In *Allis-Chalmers* for example, the Court found that the Wisconsin cause of action, alleging a breach of good faith in performance of a contract, was preempted by section 301 because the "state-law rights and obligations ... [did] not exist independently of" the collective bargaining agreement. *Id.* at 213.

The Supreme Court has further defined when a state law right or duty is independent of a collective bargaining agreement, holding that even if the state claim requires a court to discuss and evaluate the same facts as it would when interpreting the agreement, so long as the court is not actually interpreting the agreement, there is no preemption. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). If the state claim is not "substantially dependent" upon an interpretation of the agreement, the cause of action is independent and can go forward. *Id.* at 410 n.10. In sum, any time a state cause of action requires the interpretation of a collective bargaining agreement, or invokes rights that are not independent of the agreement, section 301 preempts the claim.

Although section 301 has broad preemptive effect, this court has held that "[t]he preemptive reach of section 301 . . . is by no means boundless." *Fox v. Parker Hannifin Corp.*,

Hence, the Union has failed to show that the activity W&F complains of was "arguably" covered by section 8 of the NLRA.

The policies underlying the range and extent of *Garmon* preemption also counsel a finding of no preemption. The conduct complained of here can be distinguished from protected or prohibited labor practices because the dispute has nothing to do with the process of collective bargaining, the rights of workers to bargain collectively, or the balance of power between labor and management. In this case, the Union is not representing any employees. There is no dispute between employees and management. The dispute is between the administrator of the pension and benefit fund (a third-party beneficiary) and the Company. Since this dispute presents no threat to the uniformity of federal labor law, and the Board's position as the authoritative interpreter of the NLRA is not threatened, the policies underlying *Garmon* do not require preemption.

In sum, because the Union has failed to demonstrate that its conduct was arguably prohibited by section 8 of the NLRA, *Garmon* preemption does not apply.

## C.  Section 301 Preemption

The Union and Helldobler next argue that the state law claim asserted in the third-party complaint is preempted by section 301 of the LMRA. Under their theory, the state claim should be preempted under federal law because the issues the court must determine are "inextricably intertwined with the terms of the labor contract."

Section 301 grants to the courts of the United States jurisdiction over issues pertaining to collective bargaining agreements. The Supreme Court has construed section 301 as a grant from Congress to create a federal common law of labor contracts. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957). The grant is necessary to ensure uniform national interpretation of labor agreements and thus to ensure

## III.  NOA's right to collect contributions

W&F claims that the district court's determination on the motion for partial summary judgment, in which the court found the handwritten notations on the Agreements ambiguous, contradicts the court's later conclusion that W&F is required to remit to NOA contributions for all of W&F's employees. NOA counters that following the bench trial, the district court found that the Agreements were not ambiguous; that the written terms of those Agreements required W&F to make contributions for all of its employees; and that established ERISA law entitled NOA to rely only on the printed terms of those Agreements.

It is true that in denying NOA's motion for partial summary judgment, the district court found that because of ambiguity in the Agreements, the court could not determine the intent of the parties. But following the bench trial on the sole issue of whether W&F was obligated under the Agreements to make contributions on behalf of all of its employees, the district court held as a matter of law that the intent of the parties is not relevant to this issue. Citing *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F. 2d 1148, 1149 (7th Cir. 1989), the district court held that section 515 of ERISA permits multi-employer plans to enforce the plain terms of the written agreement regardless of contractual defenses applicable to the original parties, so long as the written document does not place the plan on notice of any modifications. Further, citing *Bakery and Confectionary Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998), the court held that the actual intentions of the contracting parties, and hence the factual dispute between Helldobler and W&F, are immaterial to this issue.

As we have already pointed out, this matter is before us on an interlocutory appeal, and we are without authority to inquire into the correctness of the district court's findings of fact with regard to the intentions of the parties and whether

the notations on the Agreements reflected those intentions. Rather, we must decide whether the district court erred in holding that, as a matter of law, the intentions of the contracting parties are immaterial to the determination of W&F's obligation to make the contributions, and that the written notations made by W&F and the Union were not sufficient to place NOA on notice that it could not rely solely on the typed language of the Project Agreements and the CBA.

W&F argues that third-party beneficiary NOA's right to collect contributions flows from the CBA and therefore cannot be superior to the rights of the primary parties. For this proposition, it cites a district court opinion, *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.*, No. 93 C 3699, 1998 Dist. LEXIS 3283 (N.D. Ill. March 17, 1998). In that case, the district court denied the plaintiff's motion for summary judgment because the plaintiff sought to rely on past practices and oral understandings of the contract not reduced to writing. Although it makes clear that a pension fund's rights to collect are bounded by the written CBA, *Kroger* does not address the situation before us here, in which the parties memorialized their modifications on the face of a contract, albeit ambiguously. In fact, *Kroger* plainly spells out the ERISA policy that "pension funds are entitled to rely on the writings that establish the employer's obligation to them," *id.* at *18, concluding that an oral agreement between the employer and the union to disregard the text and course of performance cannot prevent the written agreement from being enforced at the insistence of the pension funds because "[a]ny less protection 'may well saddle the plans with unfunded obligations.'" *Id.* at * 16 (citations omitted).

W&F also cites the unreported *Craig v. Severino, Inc.*, No. 93-3516, 1994 U.S. App. LEXIS 14715 (6th Cir. June 13, 1994). W&F's reliance on *Severino* is misplaced. In *Severino*, the parties signed a duplicate of a collective bargaining agreement, but specified in writing on the contract that it was limited in scope to just one job. The court found

Cases in which the Supreme Court found that state law claims were not preempted are applicable to the circumstances here presented. In *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986), for example, the state law claim at issue was one of fraud and misrepresentation against the union. The union had represented to an employee that he was protected from discharge by the NLRA because he was not a supervisor but rather was an employee. *Id.* at 394. The union argued that the state based claim for fraud was arguably identical to the unfair labor practice of discharging an employee for protected union activities. *Id.* The Court spoke specifically to the Union's burden in arguing preemption:

> The precondition for pre-emption, that the conduct be "arguably" protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption and would therefore not be satisfied in this case by a claim, without more, that Davis was an employee rather than a supervisor. If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor.

*Id.* at 394-95. Because the union had failed to provide any evidence that the employee was "arguably" not a supervisor, the Court held that the union had failed to show that the employer's action of firing the employee was "arguably" an unfair labor practice. *Id.*

The case before this court is similar to *Davis* in that the Third-Party Defendants have failed to offer any evidence that this "case is one that the Board could legally decide in [the Union's] favor." *Id.* at 395. Here, the Union appears to claim that its allegedly fraudulent conduct occurred during the collective bargaining process and implicates the duty of good faith required during that process. It is indisputable, however, that the Union was not the representative of W&F's employees and was thus not engaged in collective bargaining.

for the employment of a discrete number of union employees on particular jobs at particular job sites.

The Ninth Circuit faced a very similar situation in which the employer filed a third-party complaint against a union for fraudulent inducement. *Operating Eng'rs Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir. 1990). The Ninth Circuit ruled that the union's actions were not "arguably" prohibited as an unfair labor practice. *Id.* at 540. As a result, *Garmon* did not even apply and there was thus no need to reach the question of whether a *Garmon* exception applied. *Id.* Likewise here, the Union has offered no evidence demonstrating that its activities are unfair labor practices. The agreement in question is not a collective bargaining agreement because the union was not the duly elected representative of a majority of the employees, and was not authorized to bargain on the employees' behalf on the terms and conditions of employment. The Union has offered nothing to support its assertion that the conduct at issue in W&F's counterclaim is arguably prohibited by the NLRA, and has therefore failed to meet its burden to show preemption.

The result would be different if the Union had made a misrepresentation connected with a collective bargaining agreement. In *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir. 1986), this court ruled that a state claim of fraud based on an employer's fraudulent misrepresentations concerning a collective bargaining agreement was preempted because the employer also breached its duty of good faith found in section 8. Unlike the situation here, the state claim involved a collective bargaining agreement, was identical to a claim that could have been brought before the Board, and the Board thus had exclusive jurisdiction under *Garmon*. It was the presence of a collective bargaining agreement and all of the duties attendant to the bargaining process—which are absent here—that caused the preemption of the state law claim in *Serrano*.

that the parties had executed a new agreement, with the limitation included. In the case at bar, there is no question that the Union and W&F sought to amend the Project Agreements in some way. The question is whether they put NOA on notice of the intended amendments by making what the district court described as "cryptic" notations on the pre-printed agreement. In *Severino*, the limitation was clearly spelled out at the top of the signature page of the contract. Here, only two of the Project Agreements bear any handwritten markings at all, and they are inserted near the signature line rather than in the body of the contract, or adjacent to any related provision. Moreover, as the district court correctly noted, the parties made no attempt to excise, cross-out, or otherwise manifest their intent to nullify the portion of the pre-printed contract that required that benefits be paid for both union and non-union employees, or otherwise to call attention to the modification.

Even if the notations on the Project Agreements perhaps should have caught the attention of an NOA administrator, nothing in the Agreements indicated that the notations were intended to supercede the unambiguous printed portions of the Agreements. The district court correctly applied the well-established precedent that ERISA funds are accorded a special status and are entitled to enforce the writing, regardless of what defenses may be available under the common law of contracts. *See New Bakery Co. of Ohio,* 133 F.3d at 959 ("The fund stands much like a holder in due course in commercial law who is entitled to enforce the writing 'without regard to understandings or defenses applicable to the original parties.'")(citation omitted). The district court also relied on *Gerber Truck Serv., Inc.*, 870 F.2d 1148, which presents a factual scenario similar to the one before us today. The *Gerber* court articulated the policy of section 515 of ERISA, namely, that the administrator is not required to look into potential side agreements. This court has adopted the *Gerber* position. *See New Bakery Co. of Ohio*, 133 F.3d at 959 ("Because, under section 515, multiemployer plans are entitled to rely on the literal terms of written commitments

between the plan, the employer, and the union, the actual intent of and understandings between the contracting parties are immaterial.").

Whether a contract term is ambiguous is a question of law for the court to determine. *Tennessee Consol. Coal Co. v. United Mine Workers of Am.,* 416 F.2d 1192, 1198 (6th Cir. 1969). The district court concluded that the handwritten notations in the two Agreements were ambiguous. We agree. The law of this circuit does not require fund administrators to read the minds of contracting parties; rather, administrators may rely on the unambiguous terms of the writing. *See New Bakery Co. of Ohio*, 133 F.3d at 959. Here, the cursory and non-specific notes on two of the five Project Agreements were the only pieces of information NOA had that the parties might have intended any modification. Without more, these notations do not indicate an intent to supercede the unambiguous typed provisions.

W&F also claims that the entire contract is void because the district court ruled that "the attempted amendments, if effective, would have produced an illegal contract." But the district court did not hold that those attempted modifications were in fact effective; rather, the court opined that the handwritten notations, if interpreted as modifying the contract in the way in which W&F claims, would make the contract illegal, and that NOA had no reason to suppose that those handwritten notations were intended to modify the contract so as to render it illegal. The district court's observation on this issue has nothing to do with whether NOA was on notice that a side agreement had been reached.

Accordingly, we **AFFIRM** the district court's decision that NOA was entitled to rely solely on the printed terms of the Project Agreements.

### IV. Motion to Dismiss Third-party Complaint

In its third-party complaint, invoking both supplemental jurisdiction and jurisdiction under 29 U.S.C. § 185(c) (2001),

permissibly regulate the union's picketing on the employer's property. *Id.* at 198-200.

Later decisions have further expanded the rationale of *Garmon* and have also displayed the extent of the exceptions to *Garmon*. In *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983), the Court rejected a claim of *Garmon* preemption based on state-law misrepresentation and breach of contract claims brought by replacement workers against their former employer. There, the employer had promised the replacement workers that they would retain their jobs even after the settlement of the labor dispute with the union. *Id.* at 494-96. However, as a result of unfair labor practice charges Belknap agreed to lay off its "permanent" replacement workers and rehire the strikers. *Id.* at 496. The Supreme Court held that the replacement workers' state suit against Belknap for fraud in relation to Belknap's promise to the replacements was not preempted because the state claim for fraud was not identical to the unfair labor practice claim brought by the striking workers. *Id.* at 510-11. Since the Board was not concerned with Belknap's representations to the replacement workers, and the replacement workers' suit had no impact on the strikers' unfair labor claims, the state regulation would not interfere with national labor policy as elucidated by the Board. *Id.* Finally, the Court found that the state's interest in protecting its citizens from misrepresentations was a "substantial interest." *Id.*

Before we address the *Garmon* factors, we must first address the threshold question of whether the Union's conduct at issue here is arguably prohibited by section 8.[2] The state law counterclaim brought by W&F is for fraud in the inducement. The claim is based on the allegedly fraudulent misrepresentations made by the union representative to induce W&F to sign agreements providing

---

[2] The union does not argue that the activity at issue is arguably subject to section 7.

congressional direction, we could not infer that Congress had deprived the States of the power to act," the Court would not find NLRA preemption. *Id.* at 244. Likewise, where the regulated activity is "merely peripheral" to the central concerns of the NLRA, the states may regulate the activity. *Id.* at 243.

The extent of the NLRA's preemption was elucidated further in *Sears, Roebuck and Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180 (1978). In that case Sears brought a trespass action in state court to enjoin the union from picketing on its property. *Id.* at 183. The Supreme Court ruled that the NLRA did not preempt the employer's state trespass action. *Id.* at 198. The Court refused to apply *Garmon* preemption mechanistically and instead opted for a flexible balancing of the federal need for uniformity, the state's interest in regulating the conduct at issue, and the potential for the state's regulation to threaten unduly the federal regulatory scheme. *Id.* at 188-89. The Court explained that when the conduct is "arguably" prohibited, two factors weigh in determining whether state regulation is preempted: (1) whether there exists a "significant" state interest in protecting its citizens from the conduct; and (2) whether state jurisdiction over the arguable labor violation would entail "little risk" of interfering with the uniform national labor policy. *Id.* at 196. The second of these factors is equivalent to the question of whether the state cause of action is "identical" to a claim that could have been made to the Board. *Id.* If the state-based claim and a potential claim to the Board are identical, then the Board has exclusive jurisdiction because the state regulation impinges directly on the Board's prerogative to fashion a uniform labor policy. *Id.* In *Sears*, the Court ruled that the state trespass law regulated the location of the picketing, while a claim to the Board would have looked at the motive behind the picketing to discern whether the picketing was an unfair labor practice. *Id.* at 198. Because the two claims were not identical, and because the state has a strong interest in protecting the integrity of its citizens' property, the state could

W&F claims that the Union and Helldobler fraudulently induced W&F to enter into the Project Agreements, fraudulently executed the Project Agreements, and negligently misrepresented the scope of those Agreements; W&F demands a declaratory judgment that because of the Third-Party Defendants' fraud, the Project Agreements are either void or voidable, and further seeks a judgment against them for indemnification, compensatory and punitive damages, and attorney's fees. The Union and Helldobler claim that the district court erred in refusing to dismiss the third-party complaint against them pursuant to Federal Rules of Civil Procedure 12 (b)(1) and (6). Specifically, they claim that: (1) the third-party complaint is subject to dismissal under the rule of *Textron Lycoming Reciprocating Engine Div. Avco Corp. v. U.A.W.*, 523 U.S. 653 (1998); (2) the complaint is preempted by the rule of *San Diego Bldg. Trades Council v. Garman*, 359 U.S. 236 (1959); (3) the complaint is preempted by section 301 and therefore subject to dismissal; and (4) Helldobler is immune from suit as an individual, pursuant to section 301 (b) and the rule in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962).

We find these claims to be without merit and AFFIRM the district court's denial of the motion to dismiss.

### A. Supplemental Jurisdiction

Helldobler and the Union first claim that the federal court lacked jurisdiction over the third-party complaint because of the limitations set out by the Supreme Court in *Textron*. In that case, the Court concluded that section 301(a) of the LMRA "confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts,'" *Textron*, 523 U.S. at 656, and that "'[s]uits for violation of contracts' under § 301 are not suits that claim a contract is invalid, but suits that claim a contract has been violated." *Id.* at 657. Because W&F does not claim in its third-party complaint that the Union and Helldobler violated the CBA but instead claims that the third-party's actions render the Project Agreements void, the

Defendants argue, the federal court lacks jurisdiction over the complaint. The Union and Helldobler have missed the point. While W&F has indeed asked for a determination that the Project Agreements are void or voidable, it has also asked for judgment against the Union and Helldobler for indemnification and damages in the event W&F is found liable to NOA for the additional contributions—liability that W&F claims arose only because of the Third-Party Defendants' fraud and misrepresentation. The third-party complaint does not present a *Textron* situation, and it is immaterial that the fraud and misrepresentation claims are not cognizable under section 301. Those claims are clearly within the supplemental jurisdiction of the federal court as spelled out in 28 U.S.C. § 1367 (a) (2001):

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Neither subsection (b) nor (c) is applicable here. Therefore, unless the district court lacked subject matter jurisdiction for some reason other than the *Textron* rule, which is inapposite here, these claims are properly within the supplemental jurisdiction of the court, arising as they do out of exactly the same facts that gave rise to NOA's complaint against W&F.

The Union and Helldobler also claim that no case or controversy exists because the Project Agreements have expired. This claim is also meritless. W&F has now been held liable to NOA for contributions far in excess of what it allegedly believed it was bound by those Agreements to make. What is at issue in this third-party complaint is

whether the Union and Helldobler are liable to W&F for their alleged fraud in inducing W&F to enter into those Agreements, their alleged fraud in the execution of those Agreements, and their alleged misrepresentations as to the number of employees covered by those Agreements. The fact that the Agreements themselves have now expired is immaterial.

### B. Garmon Preemption

The Third-Party Defendants next claim that the third-party complaint is preempted by federal law under the rule in *San Diego Bldg. Trades v. Garmon*, 359 U.S. 236 (1959). The party arguing *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the National Labor Relations Act, 29 U.S.C. § 158 (2001), ("NLRA"). *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986).

In *Garmon*, the Supreme Court synthesized its prior NLRA preemption cases: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. The Supreme Court was motivated by the expressed congressional desire for uniformity in the nation's labor policy. *Id.* at 242. To allow the Board to create uniform labor regulations for the nation's workers and employers, and to make use of the Board's expertise in the area of labor relations, the Court sought to exclude the states from the initial process of construing the reach and application of the NLRA.

This same underlying motivation for uniformity, and the principles of federalism, also allowed for exceptions to the general *Garmon* preemption rule. Thus, where the regulated conduct at issue "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling