## NORTHWESTERN OHIO ADMINISTRATORS, INC., Plaintiff,

v.

## WALCHER & FOX, INC., Defendant.

### No. 3:98 CV 7443.

United States District Court, N.D. Ohio, Western Division.

July 6, 2004.

852

Robert A. Koenig, Thomas P. Dillon, Shumaker, Loop & Kendrick, Toledo, OH, for Plaintiff.

Alan G. Ross, Ross, Brittain & Schonberg, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter comes before the Court on the issues regarding impact of the arbitration and coverage of employees Walcher and Fox individually. With respect to these issues, the Court has reviewed the parties memoranda as follows: Defendant's memorandum regarding validity of arbitration (Doc. No. 193); Third-party Defendant Union's' brief regarding impact of arbitration (Doc. No 196); Third-party Defendant Helldobler's brief regarding impact of arbitration (Doc. No. 197); Defendant's opposition on validity of arbitration award (Doc. No. 198); Defendant's memorandum regarding trust funds and exclusion of Messrs. Walcher and Fox (Doc.

No. 199); Third-party Defendant Union's reply brief regarding arbitration (Doc. No. 201); Plaintiff's combined memorandum (Doc. No. 203) and Defendant's reply brief (Doc. No. 204). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Plaintiff Northwestern Ohio Administrators, Inc. ("NOA") is the administrator of several benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1401, and brought suit against Defendant Walcher & Fox, Inc. ("W & F") seeking audit access and unpaid contributions. NOA asserted that W & F executed five employer participation agreements with Third–Party Defendants Val Helldobler ("Helldobler") and Local Union No. 55 ("Union"), the terms of which obligated W & F to make fringe benefit contributions for all employees who performed work covered by the participation agreements.

In addition to denying liability based on the purported limited scope of the agreements, W & F alternatively asserted fraud in the execution as a defense to NOA's claims. W & F also filed a counterclaim against NOA seeking a refund for alleged overpayments to the funds. W & F then filed a third-party complaint against Helldobler and the Union for fraud in the execution, fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation.

After the third-party complaint was filed, this case was trifurcated,[1] and a bench trial held on the scope of the employer participation agreements to determine whether the participation agreements obligated W & F to make benefits contributions on behalf of all its employees or only on behalf of Union member employees. In its post-trial Findings of Fact and Conclusions of Law, the Court determined that the handwritten notations were insufficient to put NOA on notice of a modification to the printed terms of the agreements. The Court therefore concluded that W & F was obligated to make benefits payments on behalf of all its employees, regardless of whether those employees were Union members.

Upon interlocutory appeal, the Sixth Circuit affirmed this Court's ruling that NOA was entitled to rely solely on the printed terms of the participation agreements.[2] See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1025 (6th Cir.2001). The Sixth Circuit further affirmed this Court's denial of the Third–Party Defendants' motion to dismiss. See id. at 1025–32.

Following this Court's denial of the Third–Party Defendants' motion to dismiss, the Union proceeded to arbitration, without notice to the Court, without the presence of the Third–Party Plaintiff, and obtained an arbitration award against the Company. W & F subsequently amended its third-party complaint, adding a claim to vacate this award.

Most recently, in September 2003, the Court denied NOA's motion for summary judgment on the issue of the viability of W & F's fraud in the execution defense given material factual disputes. (Doc. No. 189.) Within that decision, the Court requested

---

1. The Court bifurcated NOA's claims against W & F, to first determine W & F's liability for unpaid contributions, and then if liability were found, to ascertain the amount due. After inclusion of the third-party action, the matter was trifurcated to determine the validity of W & F's claims against Helldobler and the Union.

2. Because the appeal arose as an interlocutory appeal, the Sixth Circuit did not review this Court's findings of fact, instead confining its review to this Court's conclusions of law. See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1023 (6th Cir. 2001).

briefing as to the validity of the arbitration award and its impact upon the remaining claims. The Court also rejected W & F's argument regarding contributions for Walcher and Fox (individually), noting that the relevant documents needed to be reviewed in order to determine whether a particular exemption applied exempting a participating employer from making contributions for supervisors. It is on these latter two issues that the parties have submitted memoranda and those issues are ripe for disposition. The Court turns to these issues *in seriatim.*

### IMPACT OF THE ARBITRATION

#### A. The Parties' Positions

W & F submits that the arbitration conducted in November 1999 is of no moment to the present litigation on the basis that it took place with little or no notice to the Defendant and during the ongoing present litigation involving similar issues. Moreover, it is W & F's position that even assuming the relevancy of the arbitration, the Union failed to comply with the procedural requirements under the agreement. For its part the Union emphasizes the judicial determination that W & F was bound by the CBA and thus liable for contributions. Building upon that premise, the Union further contends that W & F bound itself to the arbitration process set forth in the CBA.

#### B. Procedural History

This action was commenced in August 1998. The Third–Party Defendants' motion to dismiss the Company's counterclaims was denied on October 21, 1999. (Doc. No. 78.) In that opinion, the Court addressed the failure to exhaust the arbitration provision of the CBA as contained at Article XXIX therein in the following manner:

> It is highly doubtful whether the mandatory arbitration provision applies at all in this case, since the dispute is over interpretation of the Project Agreements, rather than the CBA. Even if the Court were to assume that the mandatory arbitration provision might otherwise be applicable, however, it does not require administrative exhaustion in this case. Administrative exhaustion is not required where the aggrieved party initially appeared in the case in a defensive posture ... The Company was not required to take its claims to mandatory arbitration.

(Mem. Op., Doc. No. 78 at pp. 12–13.) Following this decision, the Third–Party Defendants filed a counterclaim and moved for a preliminary injunction seeking to compel arbitration of the aforementioned issues. On November 10, 1999, the Court denied their motion finding construction of the five project agreements was to be the sole issue of the November 22, 1999 bench trial and was an issue as between NOA and the Company. (Doc. No. 88.) In the same opinion the Court rejected the Third–Party Defendants' motion for reconsideration of their motion to dismiss, noting the Defendants' shift in position:

> Furthermore, Third–Party Defendants have seriously misrepresented the gravamen of the Company's claim in their motion for reconsideration. Third–Party Defendants argue throughout their motion that the Company's claims against them are contract claims arising out of the Project Agreements. That is not true. The Company's claim in its third-party complaint is that the Project Agreements are invalid because of fraud in the inducement. A claim that a contract is invalid—*i.e.,* a claim that the contract does not exist—is different from a claim that a contract has been breached. The Supreme Court has held that a suit seeking a declaratory judgment that a labor contract is invalid is not a suit for "violation of contracts" under the LMRA, as Third–Party De-

fendants themselves demonstrated in their motion to dismiss. Third–Party Defendants cannot now complain that the Court has accepted the legal argument they themselves made, merely because that legal argument did not ultimately work to their advantage. The Union and Helldobler's motion for reconsideration is denied.

(*Id.* at pp. 6–7.)

On November 12, 1999, the Company received the following letter from Construction Contractors Council:

Please find enclosed a copy of the grievance filed against your firm by the International Association Bridge, Structural, Ornamental and Reinforcing Iron Workers Local No. 55. A grievance hearing has been scheduled for Wednesday, November 17, 1999 at 10:00 a.m. The hearing will be held at the Construction Contractors Council office at 1845 Collingwood Boulevard, Toledo, Ohio.

You, or your representative, are requested to attend the hearing to respond to the allegations contained in the grievance.

If you have any questions concerning the grievance, please contact me.

(Doc. No. 193, Ex. 1.)

W & F's counsel responded to this letter in correspondence dated November 15, 1999, noting the absence of the grievance in the November 12th correspondence. The letter also notified Construction Contractors of the ongoing federal litigation as follows:

Walcher & Fox and the undersigned counsel are currently preparing for a trial in federal district court in Toledo on November 22 and 23 in an action concerning Northwestern Ohio Administrators, Inc.'s attempt to collect for pension fund contributions allegedly owed pursuant to five (5) project-only agreements executed by Walcher & Fox and Local 55. As a result, assuming it would otherwise be reasonable to provide a party such as Walcher & Fox with such short notice of the forthcoming hearing at your office, neither Walcher & Fox nor its counsel can be available for any hearing at your office on Wednesday, November 17, 1999. Further, the trial scheduled in federal court will definitely resolve the issue that is the subject of Local 55's purported grievance upon which you plan to hold a hearing on Wednesday, the scope of the give (5) agreements. In light of this fact, any grievance hearing would be a waste of time . . .

. . . The United States District Court for the Northern District of Ohio has scheduled a trial a week from today to determine the scope of the five project-only agreements in a case in which Walcher & Fox, Local 55 and Northwestern Ohio Administrators, Inc. are all parties. Therefore, as explained above, any dispute Local 55 may have about the interpretation or application of the collective bargaining agreement vis-a-vis the five (5) project-only agreements is already before the federal court and will be decided on its merits at the upcoming trial. As a result, any purported grievance Local 55 may have under the collective bargaining agreement is moot and futile in light of the federal court proceedings.

(*Id.* at Ex. 2.)

On November 16, 1999, the Third–Party Defendants' motion to vacate the November 22, 1999 trial date was denied. (Doc. No. 95.) The record reflects that the grievance hearing proceeded on November 17, 1999, without the presence of W & F, with the result as follows:

### DECISION

After deliberation and based upon the evidence presented, and the language in the Employee Participation Agreement,

the panel determined that Walcher & Fox, Inc. had violated the terms of the agreement. Walcher & Fox, Inc. acknowledged receipt of the notice with their written response. Walcher & Fox, Inc. is obligated to pay fringe benefits on the five (5) jobs in question. (*Id.* at Ex. 3.)

Following a trial on January 12, 2000, the Court issued findings of facts and conclusions of law finding the project agreements at issue obliged the Company to make benefits payments on behalf of all its employees, regardless of their union membership status. (Doc. No. 106.) The Court also approved interlocutory appeal and on November 13, 2001, the Sixth Circuit affirmed the decision in favor of NOA and denying the Third–Party Defendants' motion to dismiss the third-party complaint. *See Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc.,* 270 F.3d 1018 (6th Cir.2001), *cert. denied sub nom., Walcher & Fox, Inc. v. International Ass'n of Bridge, Structural, Ornamental Iron Workers, Local Union Number 55,* 535 U.S. 1017, 122 S.Ct. 1606, 152 L.Ed.2d 620 (2002).

### C. Discussion

■ With respect to the impact of the arbitration and the desire of the Third–Party Defendants to enforce the arbitration against the Company, neither party has opted to address the fact that the arbitration took place *prior* to this Court's determination that the Company was, in fact, bound by the CBA through the Participation Agreements. The Third–Party Defendants essentially want coverage of these agreements to apply *ab initio* and thus require the Company to have been forced to appear at an arbitration hearing pursuant to a grievance procedure arising out of a contract which was not deemed to apply to the Company until after the arbitration took place. This Court disagrees.

Guidance on this issue can be gleaned from the Sixth Circuit's discussion in its opinion on the prior appeal. In rejecting the Third–Party Defendants' position regarding the lack of a case or controversy, hence jurisdiction, the Sixth Circuit framed the issue in the following manner:

W & F has now been held liable to NOA for contributions far in excess of what it allegedly believed it was bound by those Agreements to make. *What is at issue in this third-party complaint is whether the Union and Helldobler are liable to W & F for their alleged fraud in inducing W & F to enter into those Agreements, their alleged fraud in the execution of those Agreements, and their alleged misrepresentations as to the number of employees covered by those Agreements.* The fact that the Agreements have now expired is immaterial.

*Id.* at 1026–1027. (Emphasis added.) In dismissing the Third–Party Defendants' preemption argument, the appellate panel noted:

The claim advanced by W & F—that the Union fraudulently induced it to sign the Employer Participation Agreements—like the claim in *Wilson,* does not require interpretation of a collective bargaining agreement[ ] or even of the Employer Participation Agreements themselves. Instead, the rights and duties at issue arise from the Union's actions prior to the formation of the Employer Participation Agreements. W & F alleges that the Union claimed it was seeking only to show W & F the benefits of having a union labor force, when in fact it was deceiving the employer into paying union benefits for all its employees. *The relevant inquiry here concerns the representations made by the Union and/or Helldobler at the time the Project Agreements were exe-*

*cuted,* not any term of the Agreements themselves. Section 301 therefore does not preempt the third-party state law claim.

Finally, allowing the district court to rule on the fraud claim presents no threat to federal labor law. Because ruling on the fraud claim does not involve the interpretation of a collective bargaining agreement, ruling on that claim presents no challenge to the uniformity of federal law governing labor contracts.

*Id.* at 1031. (Emphasis added.) In other words, the validity of the agreements in the face of the fraud allegations requires determination before application of the terms therein may proceed forward.

Prior to the arbitration notice in November, 1999, the Third–Party Defendants filed a motion for preliminary injunction to direct the Company to submit to arbitration and for a stay of proceedings pending arbitration. (Doc. No. 86.) The Court denied the Third–Party Defendants' request, and the record does not reflect that the Third–Party Defendants appealed the Court's denial of their motion to stay.

Accordingly, the Court finds that the Defendant Company is not bound by the arbitration proceeding (involving the Union) which preceded the judicial determination as to coverage of contributions to the Plaintiff as that would not be equitable. Moreover, the Court is troubled that the Defendant would be bound by an arbitration proceeding as to which the form of the grievance was not even provided in the notice, as well as the extremely short period of time between the notice and the hearing. In light of the Company's letter to the Construction Contractors Council informing them that the grievance had not been enclosed and their request to delay the proceedings, which was ignored, the failure to provide a copy of the grievance as well as the failure to specify the nature

of the violation raises serious due process questions. *See e.g. IBEW Local No. 573 v. Steen Elec., Inc.,* 232 F.Supp.2d 797, 805 n. 3 (N.D.Ohio 2002) (noting that court review of arbitration proceedings was restricted to fundamental fairness and finding that notice was adequate where grievance notification identified contractual language constituting the alleged violation). In sum, the Court finds the arbitration does not impact on the present proceedings.

### COVERAGE AS TO INDIVIDUALS

#### A. The Parties' Positions

In its September 30, 2003 opinion, this Court rejected the Company's position that Walcher and Fox, individually, were excluded from employer contributions on the basis of the NLRA definitions. Instead, the Court noted:

> [T]he parties have not addressed whether the agreements themselves speak to the inclusion or exclusion of supervisory employees from the provisions of the contracts dealing with contributions ... Unless there is a provision in the CBA, the trust agreement, or the employer participation agreements exempting a participating employer from making contributions for supervisors, contributions, if found due, will be owed for these two employees.

(Doc. No. 189 at pp. 16–17.) (Citations omitted.) Having briefed this issue, the position of the Company advocates the definitional provisions contained in the respective trust agreements preclude contributions on behalf of those individuals. In contrast, NOA notes that the participation agreements and the CBA support and do not contain an exclusion which would prohibit Company from making contributions for individuals Walcher and Fox.

The Court now turns to the respective documents involved in this analysis.

*B. The Documents*

The Employer Participation Agreements state in pertinent part:

WHEREAS, the Union is an unincorporated labor organization and an employee organization representing as the collective bargaining representative all persons who perform the work described in its Collective Bargaining Agreement (hereinafter referred as the "Bargaining Agreement"); . . .

NOW, THEREFORE, in consideration of these premises, the mutual promises and other good and value consideration, the receipt and sufficiency of which are hereby mutually acknowledged, it is hereby covenanted and agreed by and between the parties hereto as follows:

.      .      .      .      .

4. The Company agrees to make the contributions and deductions to the said Plans at the times and in the amounts specified in the Bargaining Agreement, for all its employees performing the work specified in the Bargaining Agreement . . .

(Doc. No. 143, App. 1, Ex. A.)

Article I of the CBA, as contained in paragraph 5 specifies craft jurisdiction as follows:

It is agreed the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural and Ornamental Iron workers; it being understood that the claims are subject to trade agreements and final decisions of the jurisdictional disputes settling plan of the building and Construction Trades Department of the AFL–CIO made before July 1, 1980. In this regard, the International Association claims for its members the fabrication, production, erection and construction of: all iron, steel ornamental lead, bronze, brass; copper, aluminum, all ferrous and nonferrous metals; . . .

(*Id.* at Ex. F.)

With regard to fringe benefits and miscellaneous funds, the CBA generally provides:

(144) The fringe benefit provisions contained in paragraphs A through G inclusive of Article XXV of this Agreement shall apply to all Employer members of the Association, as hereinbefore defined, all Employers who become signatory or bound by this Agreement and all other Employers or Employer groups who become a party to an Agreement relating to the fringe benefit programs described herein.

(*Id.*)

As for contributions by participating employers, the CBA states in the following manner:

(148) The Participating Employers shall make payments of fringe contributions and deductions to each and every employee benefit plan (or to the successor of any of said plan) for all employees of each such Participating Employer who are members of the collective bargaining unit represented by the Union (whether or not the employees are members of the Union), as follows: . . .

(*Id.*)

The Agreement and Declaration of Trust, Iron Workers Local 55 Annuity Pension Plan and Trust Fund describes its purpose as follows:

WHEREAS, the Association, the Union, the Employer Trustees and the Union Trustees who have subscribed to this Agreement and Declaration of Trust have separately and jointly agreed that *this Agreement and Declaration of Trust shall comprehend the rights and duties of the Association, the Union and the Trustees with respect to the administration and operation* of IRON WORKERS LOCAL NO. 55 ANNUITY

PENSION PLAN AND TRUST FUND herein created.

(Doc. No. 199, Ex. A.) (Emphasis added.) Within that agreement, Article I, Section 2 defines employees in pertinent part:

The Term "Employees" as used herein shall mean and include members of a Collective Bargaining Unit represented by the Union who are eligible to participate in and receive the benefits of the Trust Fund in accordance with this Agreement. In addition, the term "Employees" shall mean and include full-time, regular employees of the Union and the Trustees. The term "Employees" shall not include partners or self-employed persons, no matter how designated; and any such persons are hereby expressly excluded from the pension benefits to be provided hereunder.

(*Id.*)

The Amended Agreement and Declaration of Trust of Toledo Area Construction Workers Health and Welfare Plan and Trust also addresses its purpose in the following manner:

WHEREAS, the Employer Trustees and the Union Trustees who have subscribed to this Amended Agreement and Declaration of Trust have separately and jointly agreed that this Amended Agreement and Declaration of Trust *shall comprehend the rights and duties of the Employers, the Unions and the Trustees with respect to the administrations and operation of the Health and Welfare Trust Fund* herein created.

(*Id.* at Ex. B.) (Emphasis added.) This agreement also defines employees as set forth:

The term "Employee" as used herein shall mean an employee of an Employer hereunder who is or shall be a member of a bargaining unit represented by a Union which has or shall have in force an agreement with one or more Employers requiring contributions to the Fund as herein defined. The term "Employee" as used herein shall also mean such Employees of an Employer as defined in Section 1 hereof as are not members of a bargaining unit represented by by a Union which has or shall have in force an agreement with one or more Employers requiring contributions to the Fund as herein defined who shall have been proposed for the benefits provided for hereunder by their Employer and as to whom the conditions for eligibility for benefits and the method of determining the amount of the Employer's contribution shall have been agreed upon by the Trustees and the Employer concerned. The foregoing to the contrary notwithstanding, however, in any case where an Employer is an individual, proprietor, or a member of a partnership, or a Trustee of the fund who is not an Employee of an Employer who has undertaken to make contributions to the fund, such Employer shall under no circumstances be regarded as an Employee for the . . .

(*Id.*)

Finally, the Amendment, Restatement, and Continuation of Iron Workers Pension Plan Local No. 55 Pension Plan through the Trust Agreement, amends the Pension Plan and defines an employee in the following way:

The term "Employee" as used herein shall mean:

a) any person on whose account an Employer has been required to make and has made, contributions into the Trust Fund, or who is eligible for benefits as provided by the Plan, including business representatives of the Union and any member of the Union while employed in a paid capacity by the Union, provided the Union makes contributions to the Fund in behalf of such business representatives or such other persons, who shall be referred to as "Class I" Employees; and

b) any person who has accrued at least five years of Past or Future Service Credit under the Plan as a Class I Employee pursuant to the provisions of Article II hereof whose nature of employment is such that he can be classified as a "Supervisor", whose principal duty consists of supervising work performed by Class I Employees under the terms of a collective bargaining agreement between the Union and his Employer, or as an "Estimator" whose principal duty is to estimate, for his Employer, the cost of such work, and on whose behalf his Employer may elect to make contributions to the Fund pursuant to the provisions of Section 2 of Article XVIII hereof who shall be referred to as "Class II" Employees.

(*Id.* at Ex. C.)

## C. Discussion

■ Having examined the Participation Agreements, the CBA, and respective pension agreements, the coverage of Walcher and Fox, individually, is governed by the CBA and not the pension documents. As noted above, the Participation Agreement states the Union is the bargaining representative for persons performing the work designated in the CBA, the Company agrees to be bound by the CBA, and the Company agrees to be a contributing employer to the benefit plans. The Company specifically agreed to make said contributions "at the times and amounts specified in the Collective Bargaining Agreement, *for all its employees performing the work specified in the Bargaining Agreement.*" (Doc. No. 143, Ex.A.) (Emphasis added.)

The CBA in paragraph 148 addresses the contributions of the employers for those "members of the collective bargaining unit represented by the Union (*whether or not the employees are members of the Union*) ..." (*Id.* at Ex. F.) (Emphasis added.)

The respective pension agreements at their essence address the administration and operations of the respective plans. Even the language contained in each of the pension agreements definitions confine the specific term with respect to the particular plan as follows: "The term 'Employees' as used herein ...". Thus, while the Participating Agreement along with the CBA define and control the responsibilities of the employer and bargaining representative, there is nothing within the pension agreements which modify those duties. Rather, the pension agreements serve to govern the administrative process relative to the employee benefits.

Thus, the coverage of Walcher and Fox is covered through the CBA. There is no applicable exclusion which precludes the CBA's coverage as the language in the respective pension documents are limited to that specific agreement. Accordingly, NOA is entitled to delinquent contributions for all the Walcher & Fox, Inc. employees performing iron work as defined in the CBA, including Walcher and Fox, individually and the Company's other non-union employees.

### Conclusion

Based upon the foregoing and with respect to the impact of the November 1999 arbitration, the Court finds the arguments of the Company to be well taken. As to the coverage of certain employees, the Court further finds the CBA to be controlling and in the absence of exclusionary language, NOA is entitled to delinquent contributions regarding employees performing iron work.

Finally, a status conference is scheduled for August 16, 2004 at 8:45 a.m.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with

this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Court finds the Defendant Company is not bound by the arbitration.

FURTHER ORDERED that NOA is entitled to delinquent contributions regarding all employees performing iron work including Walcher and Fox.

FURTHER ORDERED status conference set for August 16, 2004 at 8:45 a.m.