RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0351p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLES ALONGI, et al.,

                *Plaintiffs-Appellees,*

     *v.*

FORD MOTOR CO.; ENVIRON, INC.,

                *Defendants-Appellants.*

No. 02-2514

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-70199—Nancy G. Edmunds, District Judge.

Argued: April 21, 2004

Decided and Filed: October 13, 2004

Before: BOGGS, Chief Judge; and NELSON and SUTTON, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Maurice G. Jenkins, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellants. Brian P. Swanson, ROY, SHECTER & VOCHT, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Maurice G. Jenkins, Paul R. Bernard, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellants. Lynn H. Shecter, ROY, SHECTER & VOCHT, Bloomfield Hills, Michigan, for Appellees.

_____

## OPINION

_____

BOGGS, Chief Judge. The question that the parties have raised and briefed in this case is whether the plaintiffs' amended complaint – which, on its face, asserts exclusively state-law causes of action – is pre-empted in whole or in part by the Labor-Management Relations Act, *see* 29 U.S.C. § 185, and/or the National Labor Relations Act, *see* 29 U.S.C. § 158. The district court held that two claims in plaintiffs' amended complaint were pre-empted, and dismissed them in the belief that primary jurisdiction over these claims lay with the NLRB. It held that the other two claims were not pre-empted by federal law, and remanded them to the state courts of Michigan.

Defendants appeal from this order, arguing that *all* of the plaintiffs' claims are pre-empted by federal law, and that, in addition, all of the claims are untimely under the federal statute of limitations. Accordingly, defendants ask this court to order dismissal of the plaintiffs' complaint in its entirety, with prejudice.

1

We affirm the district court insofar as it held that the two challenged claims in the plaintiffs' amended complaint were not completely preempted, but we go further. Mindful of our independent obligation to ensure our subject-matter jurisdiction, we conclude that none of the claims in the plaintiffs' *original* complaint were completely preempted by the Labor-Management Relations Act, either. That means that removal jurisdiction in federal court was lacking from the outset of this case. We further conclude that we are obligated to act on this jurisdictional defect in the earlier proceedings, even though neither party has raised it. We accordingly vacate the district court's rulings on the plaintiffs' original and amended complaints, and remand to the district court for entry of an order dismissing all claims without prejudice, and entry of an order remanding the entire case to state court.

## I

This is an appeal from the district court's partial grant and partial denial of defendants' motion to dismiss the plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(6). Accordingly, the facts are taken from the amended complaint, or, where noted, from plaintiffs' original complaint.

Plaintiffs are ex-employees of Environ, Inc., a former subsidiary of co-defendant Ford Motor Co. Plaintiffs worked at Environ's Wayne County, Michigan facility, and were represented by Local 2659 of the United Steelworkers of America (the "Union"). Environ's primary business was salvaging Ford's test and prototype vehicles and collecting recalled Firestone tires. Plaintiffs allege that Environ improperly resold the recalled tires to dealers and stores. They also allege that Environ sold other parts salvaged from test vehicles to commercial dealers, even though the parts had not been approved for commercial use. Plaintiffs protested these practices, but were threatened with the loss of their jobs if they refused to participate in them.

From June to September 1999, the Union and Environ negotiated a new, six-year collective bargaining agreement (CBA), to take effect on September 27, 1999. One of the Union's lead negotiators was David Lenart, the business agent for Local 2659. Environ's chief negotiator was Martin Cygan, the vice president and COO of Environ. The resulting agreement contained no provision for the job security of Environ employees in the event the plant closed.

Plaintiffs have alleged somewhat differing accounts of what happened at the negotiations. In their original complaint, plaintiffs alleged that during the negotiation of the CBA, Cygan represented that Environ would remain open for at least six more years and that all employees would be guaranteed their jobs during the period of the CBA. The original complaint also said that Cygan represented that Environ was financially secure. It claimed that the Union's bargaining committee communicated these alleged representations to the plaintiffs and other employees, who relied on them. After the federal district court held some claims in their original complaint to be pre-empted by federal law (as discussed below at page 3), the plaintiffs amended their complaint. The amended complaint alleges that Cygan made the same representations noted above, but did so *after* the ratification of the CBA.

Plaintiffs further allege (in both versions of the complaint) that at the time Cygan made these representations, he and Environ knew that a decision had been made to close the plant. Plaintiffs assert that this decision was made in part because of employee complaints about Environ's use of recalled Firestone tires.

On August 2, 2000, nearly a year into the CBA period, Environ informed the plaintiffs, and the rest of the plant's hourly employees, that the plant would close. The Union and Environ then executed a "plant closing agreement" that extended certain seniority-based severance payments, benefits, and the like to the outgoing employees. This agreement did not contain any guarantees pertaining to job security. The plaintiffs and the other Environ employees were officially terminated on November 30, 2000.

After the closing, Ford sold Environ to DST Industries, Inc. DST took over a number of Environ's contracts and eventually opened a plant on the former Environ site, where it engages in a similar business.

A small number of ex-Environ employees were given jobs with DST, including Lenart, the former union negotiator, who received a managerial position. Plaintiffs, however, were not given jobs at DST.

Plaintiffs brought this suit in the Circuit Court of Wayne County, Michigan, on December 12, 2001. Their original complaint asserted four counts, all pleaded under state law. We designate these counts with arabic numerals:

*(1) Violation of Michigan public policy.* This claim was founded upon Mich. Comp. Laws § 750.125, a misdemeanor statute that criminalizes bribery of the agents or employees of another. The plaintiffs asserted that defendants violated public policy by giving Lenart a supervisory position at DST in return for Lenart's acquiescence in negotiating a CBA that knowingly failed to protect the plaintiffs from the planned plant closing, despite Lenart's fiduciary relationship to the plaintiffs. Plaintiffs argued that the statutory anti-bribery provision gave rise to an implied cause of action against defendants.

*(2) Common law fraud.* This claim asserted that Cygan knowingly made misrepresentations during the CBA negotiations that Environ was sound and would remain open for six years, which misled the plaintiffs.

*(3) Civil conspiracy.* This claim asserted that the alleged payoff agreement between Lenart and Environ management constituted a civil conspiracy to violate public policy (as described in Count 1 above).

*(4) Discharge in violation of public policy.* This claim asserted that Environ required plaintiffs to participate in reselling unapproved parts, prototype vehicles, and recalled tires, in violation of the federal statute requiring sellers to comply with federal motor vehicle safety standards, 49 U.S.C. § 30112. It further alleged that Environ had retaliated against plaintiffs (who had complained about this) by not rehiring them to DST or any other Ford entity after the Environ plant closed. This, the plaintiffs argued, violated Michigan public policy.

The defendants responded by removing the case to federal district court and asserting that the complaint raised questions of federal labor law. The plaintiffs' state-law claims, they argued, were completely pre-empted by federal law, because adjudicating them would require interpretation of the CBA. Plaintiffs disagreed, and moved to remand the case to state court.

The district court denied the plaintiffs' motion to remand. It concluded that there was federal subject-matter jurisdiction over plaintiffs' Count 2, for fraud. The court reasoned that adjudicating Count 2 would require a court to look to the CBA and the negotiation process that produced it; accordingly, the count was completely pre-empted by federal labor law, and provided a basis for removal to federal court. To the extent that the other counts might not be so pre-empted, the court added, it would exercise supplemental jurisdiction over them.

Defendants then filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(c). They contended that all of plaintiff's claims were essentially federal in nature, and that, as a result, the claims were subject to dismissal with prejudice as untimely under the six-month federal statute of limitations applicable to claims under the NLRA. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). (Indeed, plaintiffs conceded in a later filing before the district court that if any of their claims are pre-empted by federal labor law, then those claims are indeed untimely under the applicable statute of limitations.)

Plaintiffs responded to the defendants' motion to dismiss by filing an amended complaint that recast their allegations. Like the original complaint, the amended complaint asserted four counts, which we will designate with Roman numerals:

*(I) Violation of Michigan public policy.* This count was again pleaded under Mich. Comp. Laws § 750.125. It now asserts generally that Lenart was part of the Union's CBA bargaining team, and that defendants violated public policy by helping Lenart obtain a supervisory position at DST, in order to "influence the action of Lenart in relation to the business of USWA and/or USWA Local 2659."

*(II) Fraud.* This claim was amended to assert that Cygan made knowingly false "individual promises" and "personal guarantees" to the plaintiffs, to the effect that Environ would remain open for six years and that that their jobs were secure. At one point, the amended complaint asserts that Cygan made these representations to employees in meetings that occurred "[f]ollowing [the] ratification of the collective bargaining agreement," and that the representations were "separate from the collective bargaining agreement." However, in ¶ 151, the amended complaint retains an allegation found in the original complaint: that "[a]s a result of th[e] representations, plaintiffs ratified the Collective Bargaining Agreement without requiring that their collective bargaining representatives negotiate re-employment assurances should the Environ plant close." Plaintiffs allege that they were "damaged [by the fraud] in that they did not seek other employment during the period the plant remained open."

*(III) Civil conspiracy.* This claim simply asserts that the actions by the defendants alleged in Counts I and II constitute a civil conspiracy, and that plaintiffs were damaged by the conspiracy.

*(IV) Discharge in violation of public policy.* This claim was essentially unchanged from the original complaint. As before, it asserts that Environ required plaintiffs to participate in reselling unapproved parts, prototype vehicles, and recalled tires, in violation of the federal statute requiring sellers to comply with federal motor vehicle safety standards, 49 U.S.C. § 30112. It further alleges that Environ had retaliated against plaintiffs (who had complained about this) by not rehiring them to DST or any other Ford entity after the Environ plant closed.

The district court heard defendants' motion to dismiss, and considered it as if directed to the amended complaint. On November 19, 2002, in a written opinion, the court concluded that amended Counts I and III were both pre-empted and subject to dismissal, but Counts II and IV were not.

The court held that Count I (conferring a benefit on Lenart in violation of public policy) was pre-empted by § 8 of the NLRA, because it implicated the good faith of the employer in the CBA bargaining process. The court cited *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959), for this proposition. However, it rejected defendants' argument that Count I was also pre-empted by § 301 of the LMRA on the ground that it required a court to interpret the CBA's provisions. *Ibid.* Similarly, the court held that Count III (civil conspiracy) was pre-empted by § 8 of the NLRA, because it was predicated, in part, upon the same conduct alleged in Count I.

Next, the court held that amended Counts II (fraud) and IV (retaliatory discharge against public policy) were not pre-empted. Concerning Count II, it stated that this count, as amended, asserted only that Cygan made misrepresentations to plaintiffs about their job security *after* the CBA was negotiated,[1] and thus reasoned that the claim did not relate to the agreement or the collective bargaining process. It noted that, "[a]ccording to plaintiffs, Cygan's misrepresentations were not made during the collective bargaining process and did not impact plaintiffs' decision to ratify the CBA." Concerning Count IV, the court reasoned that this count was not pre-empted by § 301 of the LMRA, because it did not depend on the interpretation of the CBA. Plaintiffs did not seek relief under the CBA, nor did they allege that defendants violated the CBA by allegedly refusing to recommend plaintiffs for employment with DST.

---

[1] As defendants observe, this was not entirely accurate. We have previously noted that the amended complaint actually retained (in Count II, ¶ 151) an allegation that the plaintiffs had ratified the CBA based in part on misrepresentations made during the negotiations. However, as we discuss below, the presence of this allegation does not alter the ultimate outcome of the preemption inquiry.

Thus, the district court held that two of the amended counts properly sounded in federal labor law, and two in state law. However, the court did not retain jurisdiction over any of the counts in the amended complaint. Instead, since it had held that Counts I and III were pre-empted by § 8 of the NLRA (rather than by § 301 of the LMRA), the court concluded that those counts belonged under the primary jurisdiction of the NLRB, not in federal district court. *See Garmon*, 359 U.S. at 242. Thus it dismissed Counts I and III without prejudice, and remanded Counts II and IV to state court.

Neither the plaintiffs nor the defendants have appealed from the district court's holding that Counts I and III were pre-empted under § 8 of the NLRA. However, the defendants have timely appealed from the district court's holding with respect to Counts II and IV. They ask this court to hold that these claims *are* pre-empted under § 8 of the NLRA and § 301 of the LMRA, and then to proceed to adjudicate those claims on the merits, by dismissing them with prejudice as time-barred under federal law.

## II

Review of the district court's decision as to whether a plaintiff's state-law claims are pre-empted by federal law is de novo. *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986).

## A

Both §7 and § 8 of the National Labor Relations Act, *see* 29 U.S.C. §§ 157-158, and § 301 of the Labor-Management Relations Act, *see* 29 U.S.C. § 185, exercise pre-emptive effect over state law tort claims that fall within their respective purviews. However, the standards for pre-emption under each statute, and the effects of pre-emption, are different.

*The National Labor Relations Act.* Section 7 of the NLRA affirms a right of employees to "form, join, or assist labor organizations" and to "bargain collectively" with their employers. 29 U.S.C. § 157. Correspondingly, § 8 of the NLRA prohibits various "unfair labor practices" that interfere with that right. As relevant here, § 8(d) requires an employer to bargain in good faith with respect to "wages, hours and other terms and conditions of employment." 29 U.S.C. § 158(d); *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1286 (6th Cir. 1986). When a plaintiff's claim involves "an activity [that] is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. As refined by later cases, the *Garmon* doctrine requires a court to apply a "balancing approach" to discern whether a state-law claim is pre-empted, in cases where the activity at issue is only "arguably" within the scope of the NLRA. *Serrano*, 790 F.2d at 1284-85. "When . . . the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that . . . it could not be inferred that Congress intended to deprive the state of the power to act, [courts] refuse to invalidate state regulation or sanction of the conduct." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983) (citations and punctuation omitted).

This type of pre-emption requires a court to yield primary jurisdiction over a given state-law claim to the NLRB, regardless of whether the claim was originally brought in federal or state court. However, it does *not* provide a basis for removal to federal court. "A claim of *Garmon* pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* pre-emption is raised, it must be considered and resolved by the state court." *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 393 (1986).

*The Labor-Management Relations Act.* Section 301(a) of the Labor-Management Relations Act provides that the federal district courts have plenary jurisdiction, without regard to citizenship or amount in controversy, over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). The Supreme Court has recognized that the "unusually powerful pre-emptive force of § 301," *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7 (2003) (internal

quotation marks omitted), places it in the small category of statutes that "not only pre-emp[t] state law but also authoriz[e] removal of actions that sought relief only under state law." *Ibid.* (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557 (1968)).   Section 301's sphere of complete pre-emption extends to state law claims that are "substantially dependent on analysis of a collective bargaining agreement," but it does not reach claims that only "tangentially involve CBA provisions." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir. 1990) (internal quotations omitted); *see DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) ("[S]ection 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms."); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

Our court applies a two-step approach to deciding whether § 301 complete pre-emption applies to a state-law claim. *DeCoe*, 32 F.3d at 216.   First, we examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms.   Second, we ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both arises from state law and does not require contract interpretation, then there is no preemption.   However, if neither or only one criterion is satisfied, § 301 preemption is warranted.   *Ibid.*

In some cases, both the pre-emptive effect of NLRA §§ 7-8 and the complete pre-emptive effect of LMRA § 301 will apply to a plaintiff's state law claims.   A federal court does not yield to the "primary jurisdiction" of the NLRB in such cases.   "[I]n cases . . . where a party's conduct gives rise to both a charge of an unfair labor practice [under the NLRA] and a claimed breach of a collective bargaining agreement [under § 301], the NLRB and the district court share concurrent jurisdiction." *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995) (internal quotation marks and citation omitted); *see William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 15-16 (1974).

B

With these standards in mind, we turn to the parties' arguments.   We will focus first upon the question of *complete* preemption under § 301, since if none of plaintiffs' claims are completely pre-empted, then we lack jurisdiction over this dispute between non-diverse parties, and it would be inappropriate to proceed to the question of possible NLRA preemption.   The defendants place heavy emphasis on our decision in *Adkins v. General Motors Corp.*, 946 F.2d 1201 (6th Cir. 1991).   They argue that *Adkins* requires us to hold that plaintiffs' amended Count II for fraud is completely pre-empted by federal law.   We disagree, concluding that two decisions of the United States Supreme Court bear more directly on the facts here.

In *Adkins*, plaintiffs were union members at GMC's Frigidaire plant.   Plaintiffs' union negotiated a CBA with GMC, in which plaintiffs made certain concessions in return for a separate negotiated agreement with GMC called the "bridge agreement."   This agreement gave the plaintiffs the right to transfer to the nearby GMC Delco plant, and also gave them the right to transfer back to the Frigidaire plant if there were layoffs at Delco.   *Id.* at 1202-03.   The plaintiffs transferred to the Delco plant.   Later, GMC sold the Frigidaire plant and that plant closed temporarily.   The union then negotiated a new CBA with GMC in which the company agreed to rehire the laid-off Frigidaire employees.   However, this agreement abrogated the earlier "bridge agreement" between the plaintiffs and GMC.   Within a year, many Delco employees were laid off, including the plaintiffs.   When they tried to rejoin the Frigidaire plant, they learned that the bridge agreement had been abrogated.   *Id.* at 1203-04.   Plaintiffs brought suit for fraud, claiming that, prior to ratification of the new CBA, their union had made false representations to them, to the effect that their "bridge agreement" rights would not be affected.   Plaintiffs alleged that the union did so as a result of collaboration between the local and GMC, and that this was fraud under state law.   *Id.* at 1204.

We held the plaintiffs' fraud claim to be pre-empted by § 301, and thus subject to dismissal with prejudice under the six-month federal statute of limitations.   *Id.* at 1210, 1213.   We reasoned, in part:

The plaintiffs' claim, as the [district] court understood it, was that the president of Local 801 had fraudulently induced them to ratify the 1979 collective-bargaining agreement that abrogated the "bridge agreement." . . . The damage alleged by plaintiffs was the loss of "bridge agreement" entitlements, which had been effected by the 1979 collective-bargaining agreement. In order to adjudicate this claim, the court below would have been obliged, at a minimum, to determine that the "bridge agreement" conferred such rights on the plaintiffs, that the subsequent collective-bargaining agreement abrogated those rights, and that the plaintiffs agreed to the 1979 collective-bargaining agreement because the president of Local 801 misrepresented those rights as the court construed them. As the court below correctly concluded, such a judicial undertaking would necessarily involve the federal courts in adjudicating a claim "substantially dependent on analysis of collective-bargaining agreements."

*Id.* at 1208 (emphasis added).

Thus, *Adkins* held that there was complete pre-emption under § 301 in a case when the plaintiffs asserted that they were fraudulently induced to sign one labor contract, thereby forfeiting entitlements that were allegedly conferred by *another* labor contract. However, in the later case of *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW*, 523 U.S. 653 (1998), the Supreme Court made clear that a simple claim of fraudulent inducement to sign a labor contract, without more, is *not* a "suit for violation of contracts," and so is not pre-empted by § 301. Plaintiffs in *Textron* claimed that management used fraudulent representations of job security to induce them to sign a collective bargaining agreement with a no-strike clause. *Id.* at 654-55. They sued for a declaratory judgment that the resultant CBA was invalid. However, plaintiffs did not allege that either party had violated the terms of the CBA.[2] *Id.* at 655. The Supreme Court held that the plaintiffs' claim was insufficient to create federal subject-matter jurisdiction under § 301. *Id.* at 658.

Likewise, in *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), the Supreme Court held that claims that the plaintiffs' employer had breached individual promises of employment security to the plaintiffs by firing them, did not give rise to complete preemption under § 301, even though the firings took place during a time when plaintiffs were unionized employees governed by a CBA. The Court unanimously held that removal to federal court was improper. *Id.* at 394, 399. It acknowledged that the plaintiffs "could have brought suit under § 301" to enforce their rights under the CBA, which would have made removal appropriate, but held that the plaintiffs' decision not to do so was entitled to respect, since their claims did not substantially depend upon interpretation of the CBA. *Id.* at 394-95.

The plaintiffs' amended Count II for fraud in the present case resembles the claims held to be non-preempted in *Caterpillar* and *Textron*. The pivotal allegations are found in ¶¶ 141-42 and ¶ 151 of the Amended Complaint. Paragraphs 141 and 142 state that Cygan made "individual promises" and "personal guarantees" to the plaintiffs, to the effect that Environ would remain open for six years and that their jobs were secure. They further assert that Cygan made these representations in meetings with employees that occurred "[f]ollowing [the] ratification of the collective bargaining agreement," and that the representations were "separate from the collective bargaining agreement." Paragraph 151 alleges other misrepresentations. It states: "As a result of [Cygan's] representations [about job security], plaintiffs ratified the Collective Bargaining Agreement without requiring that their collective bargaining representatives negotiate re-employment assurances should the Environ plant close."

---

[2]In *Adkins*, while the plaintiffs' claims sounded principally in fraud, they also asserted a claim for tortious interference with contract, premised on the argument that defendants' representations to the plaintiffs had created a new employment contract, which defendants then intentionally breached. *See* 946 F.2d at 1204 & n.1.

These allegations do not require a court (or a factfinder) to apply the provisions of the 1999 collective bargaining agreement between the plaintiffs and Environ, but only to determine whether Environ representatives made the statements alleged, and whether plaintiffs reasonably relied on them.

Nor is plaintiffs' amended Count IV, for retaliatory discharge in violation of public policy, preempted by § 301. The plaintiffs allege that they were not rehired after the closing of the Environ plant because the defendants sought to retaliate against them for objecting to Environ's use of unapproved automotive parts, in violation of federal standards. This claim deals with alleged conduct that occurred outside of the collective bargaining context. While the claim makes reference to an alleged violation of a federal statute, 49 U.S.C. § 30112, and to federal auto safety standards, the right that plaintiffs are asserting arises under the public policy of Michigan. *See DeCoe*, 32 F.3d at 216 (noting that first factor in § 301 preemption inquiry turns on whether the asserted right stems from state or from federal law). Moreover, the elements that plaintiffs must establish to prevail on this claim do not make any reference to the terms of a collective bargaining agreement. *See ibid.* Under Michigan law, plaintiffs must show that: (1) they engaged in protected activity; (2) the defendants took an employment action adverse to plaintiffs; and (3) the adverse action was causally connected to performing the protected activity. *Authier v. Ginsberg*, 757 F.2d 796, 798 (6th Cir. 1985); *Clifford v. Cactus Drilling Corp.*, 353 N.W.2d 469, 474 (Mich. 1984).

To repeat, Count IV claims that defendants' policy of reselling recalled Firestone tires and experimental parts from test vehicles violated 49 U.S.C. § 30112, which requires compliance with federal auto safety regulations. Plaintiffs claim that they objected to participating in these illegal activities, and that this caused Ford to retaliate against them, after the plant closed, by refusing to recommend them for jobs at DST or at any Ford entity. None of these allegations has anything to do with the principal CBA between the plaintiffs and Environ. As a matter of logic, the CBA could not authorize plaintiffs to participate in an (ostensible) violation of federal law even if it purported to do so. Rather, the analysis of Count IV is controlled by the Supreme Court's decision in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). There, the Court held unanimously that § 301 did not preempt a plaintiff's state-law claim that her employer improperly discharged her in retaliation for filing a worker's compensation claim. It stated that the retaliatory-discharge claim turned on "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements require[d] a court to interpret any term of a collective bargaining agreement." *Id.* at 407. Because the claim could be resolved without "construing the collective bargaining agreement," it was independent of the CBA and was not preempted by § 301. *Ibid.* The same is true here.

Defendants argue, however, that Count IV is still completely preempted because it implicates the separate "plant closing agreement" between the plaintiffs and Environ. While the amended complaint nowhere discusses the content of the plant closing agreement, defendants assert that this agreement contains provisions authorizing the alleged failure to rehire or recommend the plaintiffs.

We conclude that even if this is so, it does not establish complete pre-emption. In effect, the defendants contend that § 301 should preempt Count IV because the defendants are certain to raise a *defense* that requires interpretation of a collective bargaining agreement. The Supreme Court has rejected this view. It is true that the doctrine of complete preemption goes beyond the usual contours of the well-pleaded complaint rule, in that it requires courts to attend to the underlying substance of a plaintiff's cause of action, and not merely whether it is denominated as arising from state or federal law. But, as the Supreme Court has instructed us, the complete preemption doctrine does not abrogate the federal courts' traditional focus on the complaint, in deciding questions of removal jurisdiction. The *Caterpillar* Court explained:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on

the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

482 U.S. at 398-99; *see also Livadas*, 512 U.S. at 124 (noting that "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation . . . does not require the claim to be extinguished"; offering as an example of mere "consultation" a case in which a CBA sets the wage rates that must be consulted in order to compute a plaintiff's damages for loss of employment) (citation omitted). The distinction drawn by the Court in *Caterpillar* applies precisely to the defendants' argument here. We therefore hold that Count IV is not completely pre-empted.

Because there is no complete pre-emption, under § 301 of the LMRA, of any of the counts in the amended complaint, we affirm the district court's holding that removal to federal court was improper. As a consequence of that holding, we have no jurisdiction to consider whether any of those claims may be preempted by §7 and § 8 of the National Labor Relations Act; the matter is for the state courts to consider. *See Lattin v. Kurdziel*, No. 97-1384, 149 F.3d 1183, 1998 WL 344070 (6th Cir. May 26, 1998) (per curiam). To the extent that the district court decided the question of NLRA preemption, this was error.

C

We believe the district court's analysis of the preemption issues raised by this case was erroneous in another respect, one which we are obliged to address even though the parties have not raised it. In a prior stage of litigation, the court held that removal of plaintiffs' *original* complaint was proper, on the ground that plaintiffs' original fraud count (Count 2) was preempted under § 301. The court did not consider whether the other counts in the original complaint were also completely pre-empted, since in its view the exercise of supplemental jurisdiction over those counts would be appropriate in any case – given that Count 2 provided a basis for federal jurisdiction.

The only possible source of federal subject-matter jurisdiction in this case, which was originally filed in state court, is removal jurisdiction, on the ground that some of plaintiffs' claims are completely pre-empted by federal law. Subject-matter jurisdiction cannot be conferred by consent of the parties, nor can it be waived. *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003).

We hold that none of the claims in plaintiffs' original complaint were completely pre-empted by § 301. The district court premised its holding that Count 2 of the original complaint, for fraud, was completely pre-empted, on the presence of an allegation that Cygan, the management negotiator, misled the plaintiffs into ratifying the CBA with false representations as to Environ's financial status and the plaintiffs' job security. However, as we noted in our analysis of the fraud count in the amended complaint, *see* Part II-B, *supra*, claims of fraudulent inducement to sign a labor contract do not normally give rise to § 301 preemption. *Textron*, 523 U.S. at 658. Here, the fraud allegations in Count 2 of the original complaint are not "substantially dependent on analysis of [the] collective bargaining agreement," and so the claim was not completely pre-empted. *Parker Hannifin Corp.*, 914 F.2d at 800.

The same is true of the other three counts in the original complaint. Count 1 essentially alleges that Environ violated Michigan's public policy by bribing Lenart (plaintiffs' negotiator) with a managerial position, in return for Lenart's failing to secure strong employment guarantees in the CBA. The argument for § 301 preemption here must turn on the fact that a court hearing this claim might have to ascertain whether the resulting CBA did in fact fail to include such guarantees. *Cf. Adkins*, 946 F.2d at 1208 (finding complete preemption when plaintiffs alleged fraudulent inducement to sign a new CBA abrogating rights

already conferred by *another* CBA).  However, we conclude that original Count 1 is not completely preempted, in light of the narrow analysis used by the Supreme Court in *Textron*, which was decided after our decision in *Adkins*.  The *Textron* Court essentially concluded that, because the state fraud claim before it did not "alleg[e] that [defendant] has violated the contract," nor turn on any finding that the contract's terms were violated, it was not completely preempted.  523 U.S. at 658.  Here, Count 1 presents no stronger case for preemption.

It follows that original Count 3 (conspiracy) also is not preempted, since it merely asserts that the conduct alleged in original Count 1 (which is not preempted) was a tortious conspiracy.  And original Count 4 (discharge in violation of public policy) is materially identical to the Count IV in plaintiffs' amended complaint.  Our analysis of amended Count IV in Part II-B, *supra*, applies to original Count 4 as well, and compels us to conclude that Count 4 was not completely pre-empted.

Accordingly, the district court lacked subject-matter jurisdiction to dispose of the counts in the original complaint, as well as the amended complaint.  We accordingly vacate its prior rulings in this litigation.  The plaintiffs are free to re-file their original complaint in state court, if they choose, and such a filing would not give rise to a jurisdictional basis for removal to federal court.  The issue of complete preemption is the only issue we decide.  We express no opinion on the merits of any of the claims in the original or amended complaints, nor as to whether any of these claims may be subject to preemption under the NLRA and the *Garmon* doctrine.

### III

The district court's order is AFFIRMED insofar as it held that Counts II and IV of the amended complaint were not completely pre-empted under § 301, and remanded those counts to the circuit court of Wayne County, Michigan.  The district court's order dismissing Counts I and III of the amended complaint is REVERSED and REMANDED for entry of an order remanding the rest of the case to the same state court.  The district court's other legal rulings in this case are VACATED.