### BOARDS OF TRUSTEES OF OHIO LABORERS' FRINGE BENEFIT PROGRAMS, Plaintiffs,

v.

### WEST END LAND DEVELOPMENT, INC., Defendant.

Civil Action No. 2:08–CV–730.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 24, 2009.

Steven Louis Ball, Ball & Tanoury, Columbus, OH, for Plaintiffs.

Timothy D. Wood, Anastasia Joy Wade, Christopher J. Carney, Brouse & McDowell, Cleveland, OH, for Defendant.

### OPINION AND ORDER

NORAH McCANN KING, United States Magistrate Judge.

This matter is before the Court on the motions of defendant West End Land Development, Inc. ("West End") for leave to file a third-party complaint. *West End Land Development, Inc.'s Motion for Leave to File Third–Party Complaint,* Doc. No. 12 (*"West End's Motion"*), and *West End Land Development, Inc.'s Amended Motion to File Third–Party Complaint Instanter,* Doc. No. 16 (*"West End's Amended Motion"*). For the reasons set forth below, *West End's Motion* and *West End's Amended Motion* are **DENIED.**

### I. BACKGROUND

On July 28, 2008, plaintiffs, fiduciaries of three employee benefit trusts, filed the instant action, asserting claims under 29 U.S.C. §§ 185, 1132 in connection with West End's alleged failure to make contributions to certain employee benefits plans. *Complaint,* Doc. No. 1. On December 29, 2008, West End moved for leave to file a third-party complaint against Laborers' District Council of Ohio, AFL–CIO and Local Union # 860 ("Local 860") based on "fraudulent and negligent misrepresentation regarding the scope of the collective bargaining agreement." *West End's Motion,* pp. 1–2.

Before plaintiffs responded to *West End's Motion,* West End filed another motion, seeking to add an additional party, Laborers' District Council of Ohio, AFL–CIO, Local Union # 758 ("Local 758"), to the third-party complaint. *West End's Amended Motion,* p. 1. West End argues that Local 860 and Local 758 are liable to West End in the event that the Court determines that West End was obligated to make fringe benefit contributions for all individuals who worked on West End's projects. *Id.* at 1–3; *West End Land Development, Inc.'s First Amended Third–Party Complaint for Declaratory Judgment and Monetary Relief,* ¶¶ 14–15, attached to *West End's Amended Motion* (*"Proposed First Am. Third Party Comp."*).

West End alleges that, in January or February 2007, West End entered into a collective bargaining agreement ("CBA") with Local 860 and Local 758 (collectively, "the unions"), which required, among other things, that West End pay fringe benefits. *West End's Motion,* pp. 1–2; *West End's Amended Motion,* pp. 1–2; *Proposed First Am. Third Party Comp.,* ¶¶ 6, 8.

West End also alleges that, before signing the agreement, agents of the unions represented to West End that the agreement would cover only union members working on public works projects and would not include non-union laborers, supervisors, or private work projects that

West End acquired. *Proposed First Am. Third Party Comp.,* ¶ 7. West End further alleges that, after December 2007, it ceased making payments to plaintiffs for fringe benefits. *Id.* at ¶¶ 9–10. West End contends that permitting it "to file a third-party complaint with claims for liability dependent on the outcome of the [plaintiffs'] claim would conserve judicial resources by allowing a final determination of all of the parties' rights and liabilities in a single suit." *West End's Amended Motion,* p. 3.

Plaintiffs oppose West End's requests for leave to file a third-party complaint, arguing that the issues sought to be raised by West End in its third-party complaint involve interpretation of a CBA and are therefore preempted by § 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(d), and § 301(a) of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *Plaintiffs' Memorandum Contra Defendant's Motion for Leave to File Third–Party Complaint, Instanter,* pp. 1–2, Doc. No. 19 (*"Memo.Contra"*). Plaintiffs also contend that, in any event, documentary evidence contradicts West End's current position that it believed that all private residential agreements were excluded from covered under the CBA. *Id.* at 2–3.

West End filed its reply, denying that its claims are preempted and arguing that it should be permitted to file its third-party complaint because it has been afforded no opportunity to invoke the NLRB's jurisdiction. *West End Land Development, Inc.'s Reply in Support of Its Amended Motion for Leave to File Third–Party Complaint Instanter,* pp. 2–5, Doc. No. 20 (*"Reply"*); Exhibits A, B and C, attached to *Reply.* On April 24, 2009, this Court ordered plaintiffs to respond to the arguments raised for the first time in the *Reply;* West End was also provided the opportunity to file a supplemental reply.

*Order,* Doc. No. 21. The parties filed their supplemental memoranda. *Plaintiffs' Supplemental Reply Memorandum,* Doc. No. 24 (*"Plaintiffs' Supp. Memo."*); *Defendant's Response to Plaintiffs' Supplemental Reply Memorandum,* Doc. No. 27 (*"West End's Supp. Memo."*). This matter is now ripe for resolution.

## II. STANDARD

Rule 14(a) of the Federal Rules of Civil Procedure provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a)(1). The third-party plaintiff must obtain leave of Court if more than 10 days after service of the original answer has lapsed. *Id.*

Third-party practice under Rule 14(a) "is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action." *Metropolitan Life Ins. Co. v. Cronenwett,* 162 F.Supp.2d 889, 899 (S.D.Ohio 2001) (citing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* Civil 2d § 1442 at 295 (1990)). A third-party defendant can be properly impleaded into an action only if that party is subject to derivative liability.

## III. DISCUSSION

As discussed *supra,* plaintiffs contend that West End's claims are preempted by § 301(a) of the LMRA and § 8(d) of the NLRA. In considering the issue of preemption, the Court will first address the question of complete preemption under § 301. *See, e.g., Alongi v. Ford Motor Co.,* 386 F.3d 716, 724 (6th Cir.2004). *Cf.*

*Burklow v. Baskin–Robbins USA, Co.*, 274 F.Supp.2d 899, 905–08 (W.D.Ky.2003).

## A. Section 301(a) of the LMRA

### 1. Standard

■ Section 301(a) of the LMRA "provides that the federal district courts have plenary jurisdiction, without regard to citizenship or amount in controversy, over 'suits for violation of contracts between an employer and a labor organization representing employees.'" *Alongi*, 386 F.3d at 724 (quoting 29 U.S.C. § 185(a)). According to the United States Supreme Court, § 301 requires federal preemption of state law claims for breach of collective bargaining agreements. *Id.* (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)). *See also In re General Motors Corp.*, 3 F.3d 980, 983 (6th Cir.1993) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). More specifically, "Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). *See also Alongi*, 386 F.3d at 724 ("Section 301's sphere of complete pre-emption extends to state law claims that are 'substantially dependent on analysis of a collective bargaining agreement,' but it does not reach claims that only 'tangentially involve CBA provisions.'") (quoting *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799–800 (6th Cir.1990)). Accordingly, "any state law claim that is not independent of rights established by an agreement, and that is 'inextricably intertwined' with a determination of the meaning of the terms of an agreement, is preempted by section 301." *Northwestern Ohio Admin., Inc. v. Wal-*cher & Fox, Inc.*, 270 F.3d 1018, 1030 (6th Cir.2001) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 402, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

■ In determining whether or not § 301 preempts state law claims, the United States Court of Appeals for the Sixth Circuit employs a two-step approach. *Alongi*, 386 F.3d at 724; *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir.1994) (citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir.1989)). First, the court determines whether resolution of the state law claim requires interpretation of the terms of the collective bargaining agreement. *Id.* In making this determination, the court "looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *DeCoe*, 32 F.3d at 216. "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* Accordingly, "[e]ven if the state law claim requires a court to discuss and evaluate the same facts as it would when interpreting the agreement, so long as the court is not actually interpreting the agreement, there is no preemption." *Northwestern Ohio Adm'rs*, 270 F.3d at 1030 (citing *Lingle*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410). Second, the court determines whether the claimed right arises from state law or the collective bargaining agreement. *Alongi*, 386 F.3d at 724; *Terwilliger*, 882 F.2d at 1038. "If the right both arises from state law and does not require contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, § 301 preemption is warranted." *Alongi*, 386 F.3d at 724.

### 2. Analysis

West End seeks to assert four claims against the unions. *Proposed First Am.*

*Third Party Comp.*, ¶¶ 11–25. West End contends that its claims do not require interpretation of a CBA because the claims arise from representations made before the execution of an agreement, not from the terms of an agreement. *Reply*, p. 4. West End also argues that its claims do not independently require the Court to interpret terms of the agreement because plaintiffs' breach of contract claim already requires the Court to interpret the terms of the agreements. *Id.* at 4–5.

Plaintiffs, however, contend that § 301 preempts West End's claims because, if West End "has been defrauded as to the scope of the agreement, their claims will be substantially dependent" upon the Court's reading of the agreement. *Reply*, p. 1; *Plaintiffs' Supplemental Reply Memorandum*, p. 4, Doc. No. 24 (*"Plaintiffs' Supp. Reply"*). The Court will examine each of the proposed claims in turn.

### a. Fraudulent misrepresentation (Count III)

■ West End seeks to assert a claim for fraudulent misrepresentation, alleging, *inter alia*, that the unions "made false statements of material fact concerning the scope of the coverage and nature of the CBA[,]" "with the intent to cause West End to execute instruments radically different from what" West End was led to believe it was signing. *Proposed First Am. Third Party Comp.*, ¶¶ 19–22.

■ The Court must first determine if resolution of this claim requires interpretation of the terms of a collective bargaining agreement. *Alongi*, 386 F.3d at 724; *DeCoe*, 32 F.3d at 216. The elements of fraudulent misrepresentation under Ohio law are:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to wheth-

er it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 n. 4 (6th Cir.2007) (quoting *Burr v. Stark County Bd. of Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986)), paragraph two of the syllabus (internal quotation marks omitted).

West End argues that adjudicating this claim does not require interpretation of the CBA because the "requisite inquiry" focuses on the representations made prior to the formation of the CBA. This Court disagrees. It is difficult to understand how West End could prove the elements of its claim without interpretation of the terms of the CBA. For example, evaluation of the allegation that the unions falsely represented the scope and nature of the CBA necessarily requires an examination of the actual scope and nature of the terms of the CBA. Without such an evaluation, it would be impossible to determine whether or not the unions' representations were false, a necessary element of this claim.

West End apparently concedes that such an interpretation is necessary because it argues, alternatively, that its claims "do not *independently* require the Court to interpret" CBA terms since plaintiffs' claims will in any event require the Court to examine the CBA. *Reply*, pp. 4–5 (emphasis added). West End provides no further explanation or authority to support the proposition that its claim is not preempted merely because the resolution of that claim will not require an "independent" interpretation of the CBA. This Court concludes that, because an essential element of West End's claim is substantially dependent on the interpretation of the

CBA, Section 301 preempts this claim. *See, e.g., Paluda v. ThyssenKrupp Budd Co.,* 303 Fed.Appx. 305 (6th Cir.2008) (concluding that claims were completely preempted by Section 301 because they were substantially dependent on analysis of a collective bargaining agreement); *De-Coe v. GMC,* 32 F.3d at 216–20 (determining that Section 301 preempted claims that defendants had exceeded the scope of the collective bargaining agreement, which required substantial reference to the agreement or invoked rights created by the agreement); *Adkins v. Gen'l Motors Corp.,* 946 F.2d 1201 (6th Cir.1991) (finding that Section 301 preempted claims that plaintiffs had been fraudulently induced to sign a collective bargaining agreement).

In making this determination, the Court is mindful that the Sixth Circuit has permitted the filing of a third party complaint against a local union in an ERISA contributions case. *See Northwestern Ohio Adm'rs,* 270 F.3d 1018. In that case, however, no collective bargaining agreement was at issue. *Id.* at 1028–29, 1031. In concluding that the claims were not preempted, the Sixth Circuit specifically stated that "[t]he result would be different if the Union had made a misrepresentation connected with a collective bargaining agreement." *Id.* at 1029.[1] Unlike the situation presented in *Northwestern,* this case involves a CBA. Accordingly, *Northwestern* does not preclude (and, in fact, prescribes) a finding of Section 301 preemption here. *But see Trustees of the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling,* 555 F.Supp.2d 838 (E.D.Mich. 2008) (denying motion to strike third-party complaint because claims are not preempted by federal law).

**b. Negligent misrepresentation (Count IV)**

West End also seeks to assert a claim for negligent misrepresentation. *Proposed First Am. Third Party Comp.,* ¶¶ 23–25. Under Ohio law, negligent misrepresentation occurs where:

[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*In re National Century Financial Enterprises, Inc., Investment Litigation,* 604 F.Supp.2d 1128, 1150 (S.D.Ohio 2009) (quoting *Delman v. Cleveland Hts.,* 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989)).

As with the proposed fraudulent misrepresentation claim, resolution of this claim would require a determination of the accuracy of the unions' representations regarding the scope and nature of the CBA. *Id.* As discussed *supra,* a determination of whether or not these representations were false will necessarily require interpretation of the terms of the CBA. Under these circumstances, the Court concludes that Section 301 preempts West End's proposed negligent misrepresentation claim. *See Adkins,* 946 F.2d at 1208; *DeCoe,* 32 F.3d at 216.

**c. Declaratory judgment (Count I)**

West End also seeks to assert a claim for declaratory judgment arguing that, because of the unions' "fraud in the execution of the CBA, the CBAs were void *ab initio*"

---

1. Although this statement appeared in the Sixth Circuit's discussion of preemption pursuant to § 8(d) of the NLRA, the Sixth Circuit also noted the absence of a collective bargaining agreement in its analysis of Section 301 preemption. *Id.* at 1031.

or were voidable by West End because "execution of the CBAs by means of fraud in the inducement[.]" *Proposed First Am. Third Party Comp.,* ¶¶ 12–13. West End contends that, should the Court determine that West End is obligated to make fringe benefit contributions for all individuals for all of West End's projects, then the unions are liable to West End for the contributions "because the CBAs were obtained by fraud." *Id.* at ¶ 14.

Under Ohio law, a plaintiff must show the following in order to establish a claim for fraud or fraudulent inducement:

(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, Inc. v. TRW, Inc.,* 486 F.3d 866, 873–74 (6th Cir.2007) (quoting *Lepera v. Fuson,* 83 Ohio App.3d 17, 613 N.E.2d 1060 (Ohio Ct.App.1992)), (internal quotation marks omitted).

As discussed *supra,* Section 301 preempts this claim because a determination of whether or not the representations were false requires interpretation of the terms of the CBA. *See Adkins,* 946 F.2d at 1208; *DeCoe,* 32 F.3d at 216.

#### d. Indemnification/contribution (Count II)

Finally, West End seeks to assert a claim for indemnification or contribution.

*Proposed First Am. Third Party Comp.,* ¶¶ 16–18. In the case *sub judice,* West End's ability to seek such relief depends upon (1) whether or not plaintiffs prevail on their claims and, more significantly, (2) the merits of West End's claims that the unions procured its agreement to the CBA through fraud and misrepresentation. *See Reply,* p. 1. *See also Reynolds v. Physicians Ins. Co.,* 68 Ohio St.3d 14, 16, 623 N.E.2d 30 (1993). Accordingly, because this claim is derivative of West End's other claims, the proposed claim for indemnification or contribution is likewise preempted.

### B. Section 8(d)
#### 1. Standard

Moreover, Section 8(d) of the NLRA also preempts the proposed third-party claims. Section 8(d) requires an employer and representative of employees to confer in good faith regarding "wages, hours and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party[.]" 29 U.S.C. § 158(d). *See also Serrano v. Jones & Laughlin Steel Co.,* 790 F.2d 1279, 1286 (6th Cir.1986). "When an activity is arguably subject to § 7[2] or § 8[3] of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be adverted." *San Diego Bldg. Trades v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *Garmon* "protects the primary jurisdiction of the NLRB to determine ... what kind of conduct is

---

**2.** Section 7 of the NLRA confirms the right of employees to "form, join, or assist labor organizations" and to "bargain collectively through representatives of their own choosing[.]" 29 U.S.C. § 157.

**3.** Section 8 of the NLRA provides, in part, that "[i]t shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; ..." 29 U.S.C. § 158.

either prohibited or protected by the NLRA." *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 748, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

■ The Supreme Court of the United States "has refused to apply the *Garmon* guidelines in a literal, mechanical fashion." *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters,* 436 U.S. 180, 188, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). Instead, the Supreme Court "prescribed a balancing approach when the activity sought to be subjected to state control is only arguably, as opposed to 'clearly,' subject to section 7 or 8 of the Labor Act." *Serrano,* 790 F.2d at 1285 (citing *Sears,* 436 U.S. at 187–88, 98 S.Ct. 1745). *See also Int'l Longshoremen's Ass'n, AFL–CIO v. Davis,* 476 U.S. 380, 395, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) ("Arguably" means that "the party claiming pre-emption is required to demonstrate that his case is one that the Board [NLRB] could legally decide in his favor."). This flexible approach balances "the federal need for uniformity, the state's interest in regulating the conduct at issue, and the potential for the state's regulation to threaten unduly the federal regulatory scheme." *Northwestern Ohio Admin.,* 270 F.3d at 1027 (citing *Sears,* 436 U.S. at 188–89, 98 S.Ct. 1745). "A court considers two factors in determining whether state law claim is preempted: (1) whether there exists a 'significant' state interest in protecting its citizens from the conduct; and (2) whether state jurisdiction over the arguable labor violation would entail 'little risk' of interfering with the uniform national labor policy." *Id.*

■ In deciding *Garmon,* "the Supreme Court was motivated by the expressed congressional desire for uniformity in the nation's labor policy." *Id.* (citing *Garmon* 359 U.S. at 242, 79 S.Ct. 773). This desire for uniformity also permitted exceptions to the *Garmon* preemption rule. *Id.* These exceptions include:

(1) where Congress has affirmatively indicated that judicial power should exist; (2) where the Court cannot presume Congress meant to "intrude so deeply into areas traditionally left to local law"; and (3) where the law is so structured "that judicial supervision will not disserve the interests promoted by the federal labor statutes."

*McGlone v. Cintas Corp.,* No. 93–6062, 1994 WL 487340, at *2, 1994 U.S.App. LEXIS 24588, at *7 (6th Cir. Sept. 8, 1994) (citing *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 285–91, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)). *See also Farmer v. United Brotherhood of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (recognizing exceptions where the activity "was merely a peripheral concern" of the LMRA, was of deep local interest and where the law is so structured that the court may presume that "judicial supervision will not disserve the interests promoted by the federal labor statutes") (internal citations and quotations omitted); *Alongi,* 386 F.3d at 723 (noting exceptions where "the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility"); *Serrano,* 790 F.2d at 1284 (stating that the Supreme Court "set forth three exceptions to the *Garmon* rule") (citing Motor *Coach Employees,* 403 U.S. at 297).

### 2. Analysis

■ The parties disagree on whether or not West End's proposed claims concern conduct arguably prohibited by the NLRA. As discussed *supra,* these claims arise out of the allegation that the unions procured West End's agreement to the CBA through fraud and misrepresentation. More specifically, West End alleges that

the unions misrepresented the scope and coverage of the CBA, representing "to West End that the agreement would only cover union members working on public works projects and would not include any non-union laborers, supervisors, or private work projects West End acquired." *Proposed First Am. Third Party Comp.*, ¶¶ 7, 20. West End's claims essentially allege that the unions failed to bargain in good faith, an allegation that, if true, would violate Section 8(d) of the NLRA. 29 U.S.C. § 158(d); *Serrano*, 790 F.2d at 1286. A failure by a union representative to bargain in good faith about the terms and conditions of a CBA "is not peripheral to the concerns of federal labor law; rather, it strikes at the heart of one of the basic concerns of the law." *Serrano*, 790 F.2d at 1287 (concluding that fraud claims—the "gravamen" of which was that the employer did not bargain in good faith—were preempted by Garmon). Therefore, Garmon preemption applies to West End's claims unless an exception applies. *Id.*

West End contends that an exception exists where an aggrieved party has no opportunity to invoke NLRB jurisdiction, arguing that this exception applies here. *Reply*, pp. 3–4 (citing, *inter alia*, *Sears, Roebuck & Co.*, 436 U.S. at 188, 98 S.Ct. 1745); *West End's Supp. Memo.*, pp. 1–3 (citing, *inter alia*, *Toledo Elec. Welfare Fund v. Northwest Ohio Buckeye Elec. Ltd.*, 518 F.Supp.2d 1001, 1003 (N.D.Ohio 2007)). More specifically, West End contends that, because the NLRB lacks jurisdiction over plaintiffs' claims for unpaid benefits, the case cannot be transferred to the NLRB. *Reply*, p. 3. West End also argues that it cannot assert an impleader claim before the NLRB as a separate action because such a claim is dependent upon the success of plaintiffs' underlying claim for unpaid contributions. *Id.* Similarly, West End contends that it is unable to bring a separate action against the un-

ions for indemnification because the claim is not ripe absent a final judgment in plaintiffs' underlying claims. *Id.* Because it has no opportunity to invoke the NLRB's jurisdiction over its claims against the unions, West End concludes that *Garmon* preemption does not apply.

In response, plaintiffs argue that *Serrano*, which holds that claims for alleged misrepresentations like the ones West End intends to assert are preempted, is controlling on this Court. *Plaintiffs' Supp. Memo.*, pp. 1–2. Plaintiffs specifically contend that application of the doctrine of preemption does not rely upon the existence of an alternative forum. *Id.* at 3.

This Court agrees. In *Sears, Roebuck & Co.*, the Supreme Court agreed that [t]he primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to [a] court or the NLRB, it must be presented to the Board. But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board. We are therefore persuaded that the primary-jurisdiction rationale does not provide a sufficient justification for preempting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so.

*Sears, Roebuck & Co.*, 436 U.S. at 202–03, 98 S.Ct. 1745. However, the Supreme Court went on to caution that this conclusion would not immediately preclude preemption if otherwise appropriate. *Id.* at 203, 98 S.Ct. 1745 ("This conclusion does not, however, necessarily foreclose the possibility that pre-emption may be appropriate.").

Since *Sears, Roebuck & Co.* was decided, the Sixth Circuit has addressed exceptions

to *Garmon* preemption, but has not specifically identified an exception existing where an aggrieved party has no opportunity to invoke NLRB jurisdiction. *See, e.g., McGlone,* 1994 WL 487340, at *2, 1994 U.S.App. LEXIS 24588, at *7; *Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 609–10 (6th Cir.2004); *Northwestern Ohio Adm'rs,* 270 F.3d at 1027. This Court recognizes that one district court in this circuit has recognized this exception based on its reading of *Sears, Roebuck & Co. See Toledo Elec. Welfare Fund,* 518 F.Supp.2d at 1005. However, this Court is reluctant to apply such an exception, if it does exist, under the specific facts of this case in light of *Serrano* and *Northwestern Ohio Adm'rs.* In *Serrano,* the Sixth Circuit concluded that *Garmon* preempted fraud claims, the gravamen of which was that the employer did not bargain in good faith. *Serrano,* 790 F.2d at 1287. In *Northwestern Ohio Adm'rs,* the Sixth Circuit permitted the filing of a third party complaint against a local union in an ERISA contributions case, but it specifically stated that "[t]he result would be different if the Union had made a misrepresentation connected with a collective bargaining agreement." *Northwestern Ohio Adm'rs,* 270 F.3d 1018, 1029. Here, West End alleges that the unions misrepresented the scope and nature of a collective bargaining agreement. Under the facts of this case and in light of relevant Sixth Circuit authority, this Court is compelled to conclude that these claims are preempted. *Id.*

**WHEREUPON,** *West End Land Development, Inc.'s Motion for Leave to File Third–Party Complaint,* Doc. No. 12, and *West End Land Development, Inc.'s Amended Motion to File Third–Party Complaint Instanter,* Doc. No. 16, are **DENIED.**